NOT DESIGNATED FOR PUBLICATION

No. 111,615

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT HILL, MARCELENE CORCORAN,
CARMEN CLARK, and NATASHA WILLM,
*Appellees*,

v.

HUTCHINSON CARE CENTER, L.L.C., DESERET HEALTH GROUP, INC.,
DESERET NURSING and REHABILITATION at HUTCHINSON, INC.,
ROBERTSON PROPERTIES MIDWEST, LLC, HUTCHINSON, KANSAS, L.L.C.,
and JON H. ROBERTSON, GARETT ROBERTSON, and TYRELL J. ROBERTSON,
All Individually and Doing Business as the Named Business Entities,
*Appellants*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed October 9, 2015. Affirmed.

*John B. Rathmel*, of Evans & Dixon, LLC, of Kansas City, Missouri, for appellants.

*Melinda G. Young*, of Bretz & Young, L.L.C., of Hutchinson, for appellees.

Before PIERRON, P.J., BUSER and POWELL, JJ.

*Per Curiam*:  Robert Hill, Marcelene Corcoran, Carmen Clark, and Natasha Willm (Plaintiffs) filed a lawsuit against Hutchinson Care Center, L.L.C., Deseret Health Group, Inc., Deseret Nursing and Rehabilitation at Hutchinson, Inc., Robertson Properties Midwest, L.L.C., Hutchinson, Kansas, L.L.C., Jon H. Robertson, Garrett Robertson, and Tyrell J. Robertson (Defendants) alleging wrongful termination and violation of the Family Medical Leave Act.

1

Shortly after the parties engaged in mediation, Plaintiffs filed a motion to enforce a handwritten settlement agreement which they claimed the parties agreed to at the conclusion of their mediation session. The district court granted Plaintiffs' request to enforce the settlement agreement. Defendants appeal, asserting the district court erred when it found the handwritten document constituted a binding and enforceable settlement agreement, rather than a mere expression of the parties' intent to execute such an agreement in the future. We affirm the district court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

On October 24, 2011, Plaintiffs filed a lawsuit against Defendants for wrongful termination and violation of the Family Medical Leave Act. On January 16, 2013, the parties participated in a mediation session with a mutually agreed-upon mediator. At the conclusion of the session, all four Plaintiffs and "Skyler Robertson, Compliance Officer," executed a document which was handwritten on lined paper and provided:

"1) The [D]efendants shall pay the following sums to the specified [P]laintiffs in full [and] complete settlement of all claims pled or which might have been pled in the above captioned matter arising out of their employment by or termination of employment by the [D]efendants.

| | | |
|---|---|---|
| a) | Marcelene Corcoran | $20,000 |
| b) | Carmen Clark | $30,000 |
| c) | [Robert] Hall | $25,000 |
| d) | Natasha Willm | $25,000 |

"2) The parties shall enter into:

a) Journal entry of Dismissal [with] Prejudice as to all settling plaintiffs

b) General Release, including any ADA, ADEA release as to all settling plaintiffs

c) Joint [and] Mutual Confidentiality Agreement as to settling [P]laintiffs [and] agreement not to seek rehire

2

"3) Each party shall be responsible for their respective costs[,] fees [and] expenses. The cost of mediation to be shared 50% [Plaintiffs and] 50% [Defendants]

"4) The aforestated settlement shall be paid as follows: 1) $25,000 on or before Feb[ruary] 15, 2013 2) $25,000 on or before March 15 [and] 3) $10,000 a month thereafter for 5 consecutive months.

"5) Defendants shall agree to a consent judgment of $115,000 which may be filed five days (business) after written notice of default, i[.]e[.], failure to timely make a payment. Defendant[s] shall be entitled to credit against said judgment for any payments made prior to default."

Shortly thereafter, Defendants' counsel, Christopher K. Snow, sent an email to Plaintiffs' counsel, Melinda G. Young, inquiring into Plaintiffs' ages because "[i]n order to waive ADEA claims, there need[ed] to be a 21 day waiting period and a 7 day revocation period" if any of them were over the age of 40. Young responded to Snow's inquiry later that afternoon.

On February 23, 2013, several days after Defendants' first payment came due (as set out in the handwritten document), Snow emailed Young a proposal to modify the previously agreed upon payment schedule. Snow explained:

"As you know through recent communications with our mediator Dennis Gillen, Deseret Health Group has requested that your clients modify the settlement payment term by 90 days, payments to commence on May 15, 2013. Unfortunately, this request was necessary because after we inked the agreement, Deseret Health Group learned that Kansas was slowing down Medicaid reimbursements which greatly impacted cash flow. This was not in their control."

According to Snow, Gillen had told him that Plaintiffs were unwilling to accept this modification without "additional security." Snow proposed a $25,000 increase to the $115,000 consent judgment the parties had agreed upon at mediation, as additional

3

security to satisfy the Plaintiffs' concerns that the Defendants would not meet the modified payment schedule.

Snow attached a "modified agreement," which he asserted was signed by the "individual principals," to his email. According to the modified agreement, entitled "Settlement Agreement, Waiver and Release," Defendants agreed to pay Plaintiffs $100,000, according to a 7-month payment schedule commencing on May 15, 2013. In the event that Defendants failed to make a scheduled payment within 5 days of receiving a written notice of default, Plaintiffs were entitled to a $135,000 consent judgment, less any payments previously made by Defendants. Additionally, the document contained clauses entitled, "Waiver and Release," "Covenant Not to Sue," "Destruction of Company Property," "Non-Disparagement," "Confidentiality," "Non-Admission of Liability," "Waiver under Older Workers Benefit Protection Act," "Authority and Non-Assignment," "Survival of Covenants and Warranties," "Accord and Satisfaction," "Warranties and Acknowledgments," and "Miscellaneous."

Three days later, on February 26, 2013, Young emailed Snow a written notice of default, alleging that Defendants had defaulted on payments due under the settlement agreement. Young also advised that Plaintiffs were not willing to sign Defendants' modified settlement agreement because Plaintiffs received no increased payment in exchange for the extension of the payment schedule, and the revised agreement contained "substantially more terms than the original agreement." Young indicated, however, that because Defendants terminated Clark 2 weeks after the mediation session, she believed her clients might be willing to agree to an extension of the payment schedule if Defendants agreed to rehire Clark.

On February 28, 2013, Snow responded to Young's notice of default with the following email:

4

"I should also note that Deseret Health is not in default as the parties have not entered into a final settlement document as expressly stated and contemplated by the mediation agreement. That has not happened. I sent you a draft, and only received a general email back and nothing specific on changes. Sign it, or please make the changes your clients want and I will review with my clients."

Despite Snow's contention that Defendants were not in default, Defendants delivered a $25,000 check to Plaintiffs on March 1, 2013.

On April 9, 2013, Young emailed Snow another written notice of default, alleging Defendants had defaulted on the second $25,000 payment due March 15, 2013. Young informed Snow that Plaintiffs would seek a consent judgment pursuant to the terms of the settlement agreement if Defendants did not issue payment.

Two days later, Snow sent Young a letter detailing the numerous outstanding issues which, according to Snow, "[stood] in the way of future payments to [Plaintiffs]." Snow explained:

"Primarily, as I indicated to you clear back on February 23, 2013 (and again on February 28, 2013), your clients have still not entered into a final settlement agreement and release. This is a material term of the mediated settlement agreement and one that has been ignored by your clients. Despite this, and out of a good faith belief that your clients would comply with the mediated settlement agreement in this regard, I instructed my clients to issue the first installment of $25,000 last month.

"Attached to this letter is another proposed final settlement agreement and release taking into account the $25,000 payment already made, and altering the time of payment as a result of your client's delay and in anticipation of your client signing this or a negotiated final agreement on or before April 19, 2013."

Snow's latest proposed final settlement agreement and release contained provisions similar to the previous one Snow had forwarded to Plaintiffs, with the

5

exception of a revised payment schedule and a reduction to $115,000 in the agreed upon consent judgment.

About 2 months later, on June 13, 2013, Young sent Snow a third notice of default, alleging Defendants had defaulted on their obligations under the settlement agreement by failing to make the $25,000 payment due March 15, 2013, and the $10,000 payments due on April 15, 2013, and May 15, 2013. Young explained that because the Defendants failed to cure their default pursuant to the written notice Plaintiffs provided on April 9, 2013, they would seek a consent judgment. Additionally, Young noted: "My clients are of course willing to sign a general release in accordance with the terms set forth in the settlement agreement. They have not agreed to different payment terms and will not sign a release that provides for different payment terms than those agreed upon."

In response, Snow sent Young an email reiterating Defendants' belief that they were not in default due to Plaintiffs' failure to comply with their obligations under the "mediated settlement agreement." On the contrary, Snow asserted: "[Defendants] delay has pushed back the settlement payments, not my clients." After encouraging Young to accept the Plaintiffs' proposed final settlement agreement, Snow stated: "In the event you file the consent judgment [Defendants] will seek attorney's fees and costs . . . . [Plaintiffs] cannot seek to enforce an agreement [they] have failed to honor."

On August 9, 2013, Plaintiffs filed a motion to enforce the parties' "confidential settlement agreement," with supporting documentation for in camera review. The next day, Young sent an email to Snow, which said: "I have attached a proposed settlement agreement for the settlement reached at mediation." The attached document, which included a release of liability, claimed to memorialize the terms of the "full and final settlement" agreed upon by the parties at the mediation. Of note, the document outlined the payment schedule in the same manner as the handwritten document executed on January 16, 2013, and it set the consent judgment at $115,000.

6

Defendants filed a memorandum in opposition to Plaintiffs' motion to enforce the settlement agreement. Defendants contended the January 16, 2013, handwritten document was "conditioned on the execution and drafting of a final settlement agreement that would incorporate the terms of the handwritten document and more particularly detail certain provisions." According to Defendants, Plaintiffs' decision to furnish them with a proposed final settlement agreement and release of liability on August 10, 2013, supported their interpretation of the handwritten document. Defendants also claimed that assuming the handwritten document was enforceable, Plaintiffs materially breached the agreement by failing to (1) obtain a dismissal of their lawsuit, (2) effectuate a general release of all claims, and (3) sign a joint mutual confidentiality agreement and agreement not to seek rehire. Finally, Defendants maintained that Plaintiffs' material breach precluded them from enforcing the settlement agreement.

On September 3, 2013, the district court held a hearing on Plaintiffs' motion to enforce the settlement agreement and took the matter under advisement pending any additional briefing. Although Defendants did not submit any additional briefing, Plaintiffs submitted a written memorandum. In particular, Plaintiffs asserted that a meeting of the minds had occurred on January 16, 2013. According to Plaintiffs, the parties reduced their agreement to handwriting and, this writing did not state that it was conditional upon the execution of a "'final settlement agreement.'" Additionally, Plaintiffs disputed Defendants' contention that they had materially breached the handwritten settlement agreement. Plaintiffs insisted they were always willing to execute the documents identified in the settlement agreement but Defendants had willfully failed to comply with the terms of the payment schedule.

On October 15, 2013, the district court issued an order granting Plaintiffs' motion to enforce the settlement agreement. The district court reasoned that on January 16, 2013, the parties settled the lawsuit in mediation and memorialized the terms in a handwritten agreement signed by Plaintiffs and "'Skyler Robertson, Compliance Officer' on behalf of

7

[D]efendants." After noting there had been no assertion that Robertson did not have authority to bind Defendants, the district court found that under the agreement, Defendants were required to pay Plaintiffs $100,000, in scheduled periodic payments but rather than making timely payments, Defendants sought to modify the payment schedule and Plaintiffs rejected their request. The district court further explained that although the handwritten agreement specified that the parties would execute additional documents, "[t]he mediated agreement . . . makes no reference to a final settlement agreement." Consequently, because "[t]he law favors compromise and settlement of disputes," the district court found that neither party was entitled to repudiate the settlement agreement. The district court granted Plaintiffs' motion and ordered Young to prepare "a journal entry of judgment as specified in the January 16, 2013, agreement."

Defendants objected to Plaintiffs' proposed journal entry and moved for reconsideration of the district court's order. In addition to their complaints regarding the proposed journal entry, Defendants reasserted that the district court erred when it granted the Plaintiffs' motion to enforce. Defendants claimed that because the handwritten document contemplated the execution of a final settlement agreement, Defendants believed they would have the opportunity to review and sign a final settlement agreement; therefore, with the exception of Deseret Health Group, Inc., none of the corporate defendants signed the handwritten document. According to Defendants, Robertson, Deseret Health Group, Inc.'s, compliance officer, is not an officer of the remaining corporate defendants; therefore, he had no authority, express or apparent, to bind them; "[a]t most, Mr. Robertson's signature [was] binding on the only entity for which he could sign, Deseret Health Group."

In response, Plaintiffs stated: "Defendants obviously intended to be bound by the mediation agreement, which is evidenced by their partial performance . . . and their attempt to renegotiate the terms of the original agreement." Plaintiffs also insisted that Defendants' claim that Robertson's signature did not bind all Defendants was "improper

8

and frivolous," because Robertson clearly had express or apparent authority to settle the lawsuit.

Following a hearing on the Defendants' motion for reconsideration, the district court issued a journal entry on February 28, 2014, granting Plaintiffs a judgment against Defendants in the amount of $90,000, *i.e.*, $115,000 minus the $25,000 payment Defendants previously paid. The district court found that Defendants breached the handwritten settlement agreement by failing to comply with the payment schedule.

Defendants filed this timely appeal.

## DID THE HANDWRITTEN DOCUMENT CONSTITUTE A BINDING SETTLEMENT AGREEMENT?

Defendants contend the district court erred when it held that the handwritten document the parties drafted at the end of their mediation session constituted a binding and enforceable settlement agreement, rather than a mere expression of their intent to execute such an agreement in the future.

Settlement agreements are a type of contract; therefore, the principles of contract law govern the enforcement and interpretation of such agreements. *Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins. Co.*, 40 Kan. App. 2d 123, 129, 190 P.3d 989 (2008). The determination of whether a contract exists depends upon the parties' intentions and generally presents a question of fact reviewed under the substantial competent evidence standard. See *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). Appellate courts, however, exercise unlimited review over the interpretation and legal effect of written instruments, as the lower court's interpretation is not binding. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

Defendants maintain the handwritten document was nothing more than "an agreement to make a contract in the future," because the parties did not intend to be bound until their agreement was reduced to a formal writing containing the material terms of their settlement. In support, Defendants point to the fact that the handwritten document mentions the parties' intent to enter into a journal entry of dismissal with prejudice, a general release, a joint and mutual confidentiality agreement, and an agreement not to seek rehire but does not specify the contents of these documents. Defendants also argue that Plaintiffs subsequently would not have drafted a proposed settlement agreement if they believed the handwritten document was the parties' final, enforceable agreement.

A brief summary of Kansas contract law is necessary to properly evaluate this issue. When determining whether a settlement agreement was formed, it is important to remember "'[t]he law favors settlement of disputes,' [citation omitted,]" over protracted litigation. *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 903, 317 P.3d 139 (2014), *rev. denied* 301 Kan. ___ (2015). To form a binding settlement agreement, there must be a meeting of the minds on all of the material terms of the parties' bargain and a manifestation of an intention to be bound by these terms; any nonmaterial discrepancies can be resolved by the court, consistent with the parties' intent, if the parties have agreed upon the material terms. See *U.S.D. No. 446*, 295 Kan. at 282; *O'Neill*, 49 Kan. App. 2d 896, Syl. ¶ 4, 903.

How is the parties' intent determined?

"In determining intent to form a contract, the test is objective, rather than subjective, meaning that the relevant inquiry is the 'manifestation of a party's intention, rather than the actual or real intention.' [Citation omitted.] Put another way, the 'inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract.' [Citation

omitted.]" *Southwest & Assocs., Inc. v. Steven Enterprises*, 32 Kan. App. 2d 778, 781, 88 P.3d 1246 (2004).

Generally, agreements to execute a contract in the future are not binding unless the parties have agreed upon all the material terms, leaving nothing essential to complete the contract for future negotiations. *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 734, 512 P.2d 379 (1973). In other words:

> "'Where the intent of the parties is clear that they are negotiating with a definite understanding the terms of any contract are not fully agreed upon and a written formal agreement is contemplated, and no valid, enforceable contract is to exist until the execution of such an agreement, a binding contract does not come into existence in the absence of such execution.' [Citation omitted.]" 212 Kan. at 735.

Nevertheless, the simple fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they have not yet bound themselves to a definite and enforceable contract. 212 Kan. at 735. As explained by our Supreme Court in *Phillips & Easton Supply Co., Inc.*,

> "The matter is merely one of expressed intention. If [the parties'] expressions convince the court that they intended to be bound without a formal document, their contract is consummated, and the expected formal document will be nothing more than a memorial of that contract. In very many cases the court has been convinced that such was the intention and has held the parties bound by a contract even though no document has been executed.'" 212 Kan. at 735-36.

Finally, once the parties have agreed to settle their dispute, neither party may repudiate the agreement. *O'Neill*, 49 Kan. App. 2d at 903.

We are persuaded there is substantial competent evidence the handwritten document is a contract that clearly expressed the parties' intent to settle the lawsuit and

11

end the litigation upon the Defendants' payment of monies to the Plaintiffs. See *U.S.D. No. 446*, 295 Kan. at 282. Three factors compel this conclusion.

First, the material terms of settlement agreements used to resolve ordinary litigation disputes typically include references to the case, the parties, the plaintiff's promise to dismiss the lawsuit and release liability, and the payment of settlement monies by the defendant. In this case, the plain language of the handwritten document identifies the case, the parties to the settlement agreement, and the consideration provided by the parties in order to effectuate the contract. The Plaintiffs promised to settle the dispute and dismiss their lawsuit upon Defendants' promise to pay fixed amounts to named Plaintiffs. The dates these payments were due were also fixed. Moreover, the document also detailed the parties' rights and responsibilities in the event of Defendants' default which could lead to a consent judgment in the amount of $115,000.

In short, the handwritten document exhibited all the components that one would expect in a typical settlement agreement—within the four corners of the handwritten document is found material terms of agreement resolving the litigation upon the payment of specified settlement sums on certain dates to compensate the named Plaintiffs in agreed-upon amounts.

Second, while the handwritten document expressly provides for the subsequent execution of a journal entry of dismissal with prejudice, a general release, a joint and mutual confidentiality agreement, and an agreement not to seek rehire, these are ordinary documents the parties agreed to submit to implement the settlement agreement. That these documents would be executed by the parties in the future was material to the agreement, but the particular language of these standard documents was not material to the contract. In the ordinary course of settling litigation, documents implementing the settlement agreement are typically and necessarily left for future handling by the parties. Moreover, in their appeal, Defendants have not identified any material terms that required

further negotiations, and the handwritten document does not contain an express reservation of right not to be bound in the absence of particular language contained in the implementing documents.

Third, Defendants' outward expressions of assent after the execution of the handwritten document demonstrate that the parties consummated a binding and enforceable settlement agreement. Kansas law provides: "The subsequent conduct and interpretation of the parties themselves may be decisive of the question of whether a contract has been made even though a document was contemplated and has never been executed." *King v. Wenger*, 219 Kan. 668, 672, 549 P.2d 986 (1976). Several examples of statements and conduct by counsel for Defendants show that Defendants considered the handwritten document to be a binding settlement agreement.

As Plaintiffs noted in the district court, "[o]nly after [Defendants] were unsuccessful in renegotiating the original terms did they argue that the original agreement was not enforceable." About 1 week after Defendants' first payment was due, Defendants attempted to reopen negotiations in order to delay the payment schedule by 90 days, a needless action if the parties were not yet bound to the terms of the settlement. In fact, Snow's email detailing Defendants' requested modification proves that Defendants believed the handwritten document was a binding contract: "Unfortunately, this request was necessary because *after we inked the agreement*, Deseret Health Group learned that Kansas was slowing down Medicaid reimbursements which greatly impacted cash flow. This was not in their control." (Emphasis added.) Similarly, Snow noted:

> "[T]he mediation agreement requires I receive written notice of default and a 5 day cure
> if you are claiming we are in default. I have never received such notice and obviously
> wanted to avoid that which is why I reopened the mediation and . . . attempt[ed] to
> modify the payment schedule."

13

Additionally, the "Settlement Agreement, Waiver and Release" Snow attached to his email states: "[O]n January 16, 2013, the Parties engaged in mediation and *reached a full and final settlement*, the terms of which are reflected herein." (Emphasis added.) Finally, Defendants' partial performance of the contract, *i.e.*, making a $25,000 payment to Plaintiffs on March 1, 2013, also negates their contention that they were not bound by the settlement terms outlined in the handwritten document until the parties executed a formal instrument.

In resolving this issue, one opinion of our court, *Hattan v. Schoenhofer*, No. 99,734, 2009 WL 2902570 (Kan. App. 2009) (unpublished opinion), is especially persuasive. In *Hattan*, William Hattan filed a legal malpractice action against Mark Schoenhofer, after Schoenhofer failed to file a civil battery action prior to the expiration of the statute of limitations. Hattan and Schoenhofer negotiated a written settlement agreement; however, Schoenhofer refused to sign it, so Hattan sued for breach of contract. The district court granted summary judgment in favor of Schoenhofer, finding that no binding agreement existed because "'[t]here was not an intent to be bound until the document was executed and signed.'" 2009 WL 2902570, at *2.

Hattan appealed, and our court applied a nonexclusive, four-factor test—utilized in *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241 (E.D.N.Y. 2002)—to determine whether the parties intended to be bound by the settlement agreement absent a formally executed document:

> "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Hattan*, 2009 WL 2902570, at *5.

14

Our court noted that while no single factor was decisive, the test provided guidance in evaluating the totality of the circumstances and the parties' intent regarding the binding nature of the settlement agreement. 2009 WL 2902570, at *5.

The *Hattan* court concluded that under the Conway four-factor rubric, the parties had entered into a binding and enforceable settlement agreement. 2009 WL 2902570, at *5-9. In particular, our court found that Schoenhofer's counsel had communicated to Hattan's counsel that his client agreed to the terms of the agreement and, as a result, "[a]uthority and confirmation were both present in [these] statements. The expected formal document was nothing more than a memorial of that agreement." 2009 WL 2902570, at *9.

Applying the Conway test to the facts of this case, we conclude there was a meeting of the minds between the Plaintiffs and Defendants regarding the material terms of their settlement. First, the handwritten document was, in fact, executed by the parties and did not contain an express reservation of the right not to be bound in the absence of a formal instrument. Second, Defendants partially performed on the agreement. Third, Defendants have identified no material terms which remained open for further negotiations. Fourth, while settlement agreements are typically formalized in writing, there is no requirement the writing must be typed or memorialized in a particular format. In short, *Hattan* is persuasive authority to support the district court's finding that the handwritten document was a valid contract.

In the alternative, Defendants argue that any contract was unenforceable for two reasons. First, Defendants insist that Plaintiffs materially breached the settlement agreement by failing to execute a journal entry of dismissal with prejudice, a general release, a joint and mutual confidentiality agreement, and an agreement not to seek rehire. According to Defendants, this breach precludes Plaintiffs from seeking to enforce the agreement. In other words, Defendants essentially contend that Plaintiffs' execution of the

waiver and release documents was a condition precedent to their performance, and the district court erred by excusing Plaintiffs from performing their obligations under the settlement agreement.

"Conditions precedent to performance under an existing contract arise from the terms of a valid contract and define an event that must occur before a right or obligation matures under the contract." *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 47, 234 P.3d 833 (2010). Despite Defendants' assertion to the contrary, the handwritten settlement agreement does not provide that Plaintiffs' execution of the various implementing and supporting documents was a condition precedent to Defendants' performance. Indeed, the handwritten document negates such an intent because it contains a detailed payment schedule, which obligated Defendants to begin making payments within 1 month of the mediation session and provides a remedy for Plaintiffs should Defendants fail to abide by the terms of the payment schedule. Defendants could have bargained for the execution and exchange of the supporting documents prior to payment of any settlement monies, but such language is not found in the written agreement.

The district court simply granted Plaintiffs the remedy to which they were entitled under the settlement agreement; the district court's order did not excuse Defendants from performing their obligations under the agreement. Although the agreement does not specify a timeframe for Plaintiffs' performance, this was not a unilateral contract and, thus, Plaintiffs must still make good on their promises under the terms of the agreement.

Next, Defendants assert that Deseret Health Group, Inc., was the only defendant against whom the settlement agreement could be enforced because Robertson, a representative of Deseret Health Group, Inc., did not have express or apparent authority to bind all of the defendants. Plaintiffs counter that Robertson clearly had express or apparent authority to settle the case, as his signature does not indicate that he only

16

represented Deseret Health Group, Inc., the handwritten document refers to Defendants collectively, and Defendants' proposed "'Settlement Agreement, Waiver and Release'" indicates their "expectation that all defendants were bound by the mediation agreement, not just . . . Deseret."

At the outset, as Plaintiffs correctly note, Defendants raised this argument for the first time in their motion for reconsideration. A motion to reconsider is generally treated as a motion to alter or amend judgment under K.S.A. 2014 Supp. 60-259(f). *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). Motions filed under K.S.A. 2014 Supp. 60-259(f) provide district courts with the opportunity to "reconsider its prior findings of fact and conclusions of law and make what it deems to be appropriate amendments and alterations thereto." *In re Marriage of Willenberg*, 271 Kan. 906, Syl. ¶ 2, 26 P.3d 684 (2001). Consequently, district courts may properly deny a motion for reconsideration "where the moving party could have, with reasonable diligence, presented the argument prior to the verdict." *Wenrich v. Employers Mut. Ins. Co.*, 35 Kan. App. 2d 582, 590, 132 P.3d 790 (2006). Appellate courts review a district court's decision on a motion to alter or amend for abuse of discretion. *Exploration Place, Inc.*, 277 Kan. at 900.

Defendants do not explain their failure to argue Robertson's alleged lack of authority to bind the entirety of the defendants prior to the issuance of the district court's order. Nor do they indicate why they could not have raised this argument, with reasonable diligence, in a timely fashion. As a result, the district court could have refused to consider this argument but it is unclear whether the court actually denied Defendants' motion on this basis.

Nevertheless, the district court did not err in denying this claim on reconsideration because Defendants have never presented any evidence to prove that Robertson acted only as an agent of Deseret Health Group, Inc., and did not have authority to bind the

17

remaining defendants. The evidence, including Snow's conduct and communications, persuades us that all of the defendants intended to be bound by the settlement agreement.

In conclusion, the district court did not err when it found the parties entered into a binding and enforceable settlement agreement. The evidence demonstrates that a meeting of the minds occurred during the parties' mediation session and the parties fully intended to be bound by the handwritten document they executed at the conclusion of the mediation. Moreover, this document reflected all of the material terms of their negotiated settlement. Accordingly, the district court did not err in enforcing the settlement agreement by ordering that Defendants pay the consent judgment.

Affirmed.