896

(317 P.3d 139)
No. 109,122

KEVIN O'NEILL, LISA C. O'NEILL, and AMERICAN QUALITY CONSTRUCTION, INC., d/b/a/ ESTATE HOMES, *Appellants*, v. ZOE HERRINGTON, *Defendant*, and GREG T. SPIES, and MCDOWELL, RICE, SMITH & BUCHANAN, P.C., *Appellees*.

Opinion filed January 24, 2014.

*Nathan D. Leadstrom*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellants Kevin O'Neill and Lisa C. O'Neill.

*J. Nick Badgerow*, of Spencer Fane Britt & Browne, LLP, of Overland Park, and *Thomas R. Buchanan, Linda C. McFee*, and *Jason L. Buchanan*, of McDowell, Rice, Smith & Buchanan, P.C., of Kansas City, Missouri, for appellees.

Before MALONE, C.J., GREEN and BRUNS, JJ.

GREEN, J.: This appeal arises out of the trial court's judgment enforcing a settlement of a lawsuit between Kevin O'Neill and Lisa C. O'Neill (the O'Neills) and Greg T. Spies and McDowell, Rice, Smith & Buchanan, P.C., (collectively MRSB). The O'Neills sent an unsolicited email to MRSB offering to dismiss MRSB from the lawsuit in exchange for a mutual release. While they expressly preserved their claims against a separate defendant, Zoe Herrington, they did not preserve nor express any intent to preserve any claims against MRSB. MRSB accepted the offer by return email.

After receiving MRSB's acceptance of the O'Neills' offer, the O'Neills asked that MRSB prepare and sign a written agreement for the release that same day. MRSB did so. After receiving the written settlement agreement, the O'Neills then asked that their attorneys be specifically mentioned by name in the agreement. MRSB inserted the names of the O'Neills' attorneys in the agreement, signed it, and emailed the agreement to the O'Neills. When the O'Neills failed to sign the agreement, MRSB moved to dismiss the case and for the court to enforce the settlement agreement.

The trial court ruled that the O'Neills had agreed to a settlement agreement to dismiss MRSB from this lawsuit in exchange for a mutual release. The trial court found that the agreement was binding even though the formal agreement had not been signed by both parties. On appeal, the O'Neills contend that the trial court erred in ruling that a settlement agreement had been reached to justify dismissing the lawsuit between the parties with prejudice. We disagree. In addition, the O'Neills contend that the trial court erred in granting summary judgment in favor of MRSB on their slander of title and abuse of process claims based on the statute of limitations. Because we are affirming the trial court's judgment on the basis of a settlement agreement having been reached between the parties, it is not necessary that we address the O'Neills' statute of limitations contention.

The underlying lawsuit began when Zoe Herrington sued the O'Neills for specific performance of a real estate contract. Once that suit was dismissed, the O'Neills sued MRSB and Herrington for malicious prosecution, slander of title, and abuse of process. MRSB represented Herrington in the underlying lawsuit where the trial court granted summary judgment to the O'Neills.

On June 22, 2011, the trial court granted summary judgment to MRSB and Herrington on the O'Neills' abuse of process and slander of title claims, finding that the claims were barred by the statute of limitations. The remaining malicious prosecution claim was set for trial on August 20, 2012.

On June 19, 2012, MRSB moved for summary judgment on the malicious prosecution claim. The O'Neills had to respond to MRSB's motion for summary judgment by July 13, 2012.

On July 12, 2012, 1 day before the O'Neills' deadline to respond, the O'Neills contacted MRSB with a settlement offer. At 12:15 p.m., the O'Neills emailed counsel for MRSB offering to dismiss the case against MRSB in exchange for a mutual release:

"My wife and I are interested in dismissing the case against Mr. Spies and your firm [MRSB]. Let me know if you will provide a mutual release. If you will then we can move forward on the dismissing the case against your firm and Mr. Spies. We would not be agreeable to dismissing the case against Mrs[.] Herrington. This offer is good through till this time tomorrow."

Counsel for MRSB accepted the O'Neills' settlement offer by email at 12:35 p.m. the same day: "I have authority to settle all of plaintiffs' claims against MRSB and Mr. Spies on those terms. We will draft up the appropriate papers and forward them to you."

The O'Neills then responded: "Can you get me the release before the end of the day? Otherwise we have to finish the response to your motion and get it over to the court house."

At the O'Neills' request, MRSB's counsel drafted the formal written settlement agreement and release and a stipulation of dismissal with prejudice and emailed those documents to the O'Neills the same day. The O'Neills reviewed the formal written settlement agreement and release, and the only request they made was that the release specifically mention and include the names of their former attorneys in the release. MRSB made the requested

change. The O'Neills then asked MRSB to send them a signed copy of the formal written settlement agreement and release for them to sign: "Please have it [the agreement] signed and then fax it to [us.] My wife and I will execute it and fax it back to you. Regards . . . ."

After MRSB accepted the O'Neills' settlement and mutual release offer, MRSB's counsel emailed the trial judge to advise him of the settlement. The trial judge then asked the O'Neills to confirm by email the following: (1) that MRSB was being dismissed with prejudice, (2) that the O'Neills would proceed solely against defendant Zoe Herrington, and (3) that the trial court could disregard MRSB's motion for summary judgment. The trial judge further stated: "I need Mr. and Mrs. O'Neill to confirm this to me by e-mail. If they do, the e-mail will go into the Court file and will be a binding decision on their part."

MRSB responded to the trial court's email, with a copy to the O'Neills, confirming the answer to each of the court's three questions was "yes," that the agreement was documented and that signatures were being arranged. After a few hours, the O'Neills also confirmed that they had released MRSB from the suit:

"Lisa and I [the O'Neills] wanted to confirm that we have released MSRB [sic] and Mr. Spies from the suit. We are sorry for taking so long to respond we just needed to make sure our attorneys were included in the release. We have a meeting with David Smith on Monday about entering his appearance in the case. Unfortunately he [sic] can not meet with him until 2:00 p.m."

The next day, on July 13, 2012, the O'Neills sent an email to the trial court advising the judge that they could not meet with Smith until the following week and that Smith wanted to review the formal written settlement agreement at their meeting. The O'Neills asked the trial judge if that was okay. The trial judge responded:

"I am not sure what you are asking me. As far as I am concerned, you have officially told the Court that you are releasing MRSB and Spies. If you talk to Mr. Smith on Monday and he advises that you should not have done so, that will change nothing, they are still dismissed from the case. . . ."

The O'Neills responded and told the judge: "I was just referring to having the signed [formal written] settlement agreement that I

was hoping to have today." The trial judge then responded: "I do not see this as a problem, with the understanding that again, if he advises you that you should not have decided to release MRSB and Spies, you cannot retreat from your position yesterday that you have released them."

When the O'Neills had not signed the formal written settlement agreement and mutual release by July 15, 2012, MRSB filed a motion to dismiss with prejudice. MRSB asked the court to direct the O'Neills to sign the mutual release and settlement agreement and to dismiss MRSB from the suit with prejudice.

A couple of days later, on July 17, 2012, the trial court held a pretrial conference. At the pretrial conference, the O'Neills told the trial court that they had not signed the formal written release because they never intended to release MRSB on the abuse of process and the slander of title claims that were previously dismissed. The O'Neills stated, "[We] had never contemplated releasing them of the abuse of process and the slander of title that had already been dismissed. That is—and [we] haven't had a chance to go through it completely to figure out what else there is, but that is [our] biggest contention." The O'Neills agreed to dismiss the malicious prosecution claim against MRSB but maintained that they never intended to provide a full release of all claims.

On July 23, 2012, the trial court held a hearing on MRSB's motion to dismiss. At the hearing, the O'Neills argued that the emails clearly show that they were still considering the agreement and that they wished to have an attorney review the formal written agreement before they signed it. On the other hand, MRSB argued that the O'Neills contacted them and offered a mutual release. MRSB accepted that offer of a mutual release. MRSB maintained that based on Kansas law an agreement was formed even though the agreement was not yet formally drafted.

The trial court ruled from the bench and agreed with MRSB. The trial court enforced the settlement agreement and dismissed MRSB with prejudice. The trial judge stated:

"Kansas contractual law is clear that I have to enforce agreements based on what the parties—well, I have to determine their intent. And when the agreement

is in writing, through e-mail or whatever, I have to garner that intent from the words used by the parties. And I think in this case, the words clearly intended that both parties completely and fully released each other."

The O'Neills moved for reconsideration, which the trial court denied.

## DID THE TRIAL COURT ERR IN RULING THAT A SETTLEMENT AGREEMENT HAD BEEN REACHED TO DISMISS THE LAWSUIT BETWEEN THE O'NEILLS AND MRSB?

Here, the records indicate that the trial court granted MRSB's motion to dismiss based on the pleadings, motions of the parties, and other written materials. Before ruling from the bench, the trial court heard arguments from the parties. In such situations, our Supreme Court has held:

" 'Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish.' " *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990); see also *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001) (interpretation and legal effect of contracts and other written instruments); *cf. Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 268-69, 275 P.3d 869 (2012) (applying de novo, standard of review where no evidentiary hearing is held and matter resolved based upon only pleadings and affidavits of the parties and considering evidence in light most favorable to the nonmoving party.

The essential elements of a valid informal contract are as follows: (a) A promisor and a promisee each of whom has legal capacity to act as such in the proposed contract; (b) manifestation of assent by the parties who form the contract to the terms thereof and by every promisor to the consideration for his or her promise; (c) a sufficient consideration; and (d) the transaction, though satisfying the foregoing requirements, must be one that is not void by statute or by special rules of the common law. Restatement (First) of Contracts § 19 (1932).

Whether a contract exists is a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). On appeal,

we review the record to determine whether substantial competent evidence exists to support that factual conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

When determining whether an agreement was formed, it is important to remember the key principle that "[t]he law favors settlement of disputes." *Bright v. LSI Corp.*, 254 Kan. 853, Syl., 869 P.2d 686 (1994). For numerous reasons, we prefer that parties settle their disputes rather than engage in litigation. Settlements need not be in writing to be enforceable. *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 202-03, 785 P.2d 1367 (1990). Because a settlement agreement is a contract, what is required is that the parties reach agreement on all material terms. Once that is done, any nonmaterial discrepancies can be resolved by the court consistent with the parties' intent when they agreed upon the material terms. See *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 396-400, 996 P.2d 821 (2000). Moreover, once one party has made a settlement offer and the other party has unconditionally accepted it, neither party may call off the agreement. *Connor v. Hammer*, 201 Kan. 22, 24, 439 P.2d 116 (1968).

On appeal, the O'Neills raise several objections to enforcement of the settlement agreement, including that there was no meeting of the minds as to a full release. The O'Neills contend that it was their intent to release MRSB from only the pending claim of malicious prosecution and not from the two previously dismissed claims of slander of title and abuse of process. The O'Neills further maintain that they did not intend to be bound by the agreement until they had a formal written agreement reviewed by counsel. And finally, the O'Neills argue that the court should take into consideration that they were acting pro se when they allegedly entered into this settlement agreement and full release. We will address each of these issues individually below.

*Secret Intent to Only Release Pending Claim*

The O'Neills maintain that it was never their intent to release MRSB from all claims and that they intended to release MRSB from only the pending claim of malicious prosecution. Thus, they

argue that there was no meeting of the minds and therefore no binding contract.

In order to find that the O'Neills and MRSB entered into an enforceable contract, MRSB is required to show a meeting of the minds as to all essential terms. *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 79, 630 P.2d 1107 (1981).

"In determining intent to form a contract, the test is objective, rather than subjective, meaning that the relevant inquiry is the 'manifestation of a party's intention, rather than the actual or real intention.' [Citation omitted.] Put another way, 'the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract.'" *Southwest & Assocs., Inc. v. Steven Enterprises*, 32 Kan. App. 2d 778, 781, 88 P.3d 1246 (2004) (citing 1 Lord, Williston on Contracts § 4:1, p. 241 [1990]).

While it may be true that the O'Neills did not intend to release MRSB from the two previously dismissed claims, the O'Neills failed to share this secret intent. Only disclosed intentions can be part of the parties' contract; undisclosed intentions are not to be considered when construing the intent of the parties to a contract. See *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 600, 647 P.2d 1268 (1982) (" '[I]t is the intention that is expressed in the contract that controls, not an intention secretly cherished by one of the parties' "); *State, ex. rel. v. Rosenbaum Grain Co.*, 115 Kan. 40, 50, 222 P. 80 (1924) (A party's undisclosed intention will not defeat a contract.). The O'Neills did not share their secret intent to release MRSB from only the pending claim of malicious prosecution. There is no room to attach any importance to the O'Neills' secret personal or individual intentions. Here, the emails, which used unambiguous words between the parties, showed that an offer and an acceptance had occurred. Moreover, the O'Neills did not condition their offer to say that no agreement shall be formed until a formal agreement has been drawn up and signed. There is no question that the O'Neills understood how to condition an offer or to preserve a claim since they expressly stated they wanted to preserve their claim against Herrington.

The trial court properly ruled that there was a meeting of the minds between the O'Neills and MRSB and that the contract contained a full release for both parties.

*No Intent to Be Bound Until the Contract Was Reviewed by an Attorney and Signed*

The O'Neills also argue that they did not intend to be bound by the agreement until the following: (1) the formal written agreement was reviewed by their attorney; and (2) they had signed the formal written agreement. The O'Neills maintain that they were still negotiating the terms of the contract and that they cannot be bound by the contract until they signed it.

Parties can bind themselves to a contract orally or by informal letters or emails. "The fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract." *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 735, 512 P.2d 379 (1973).

The O'Neills' argument is untenable for two reasons: First, the trial court specifically told the O'Neills that their confirmation of the release to the court would be binding on them and would be made part of the record. The trial court further explained to the O'Neills that an attorney could review the agreement but if the attorney later told them that they should not have released MRSB that would not change anything because they had already agreed to release them. Second, the O'Neills were the ones who set the 24-hour deadline on the settlement agreement. The O'Neills contacted MRSB with the settlement offer 1 day before their deadline to respond to MRSB's motion for summary judgment. Thus, the O'Neills needed to reach a settlement within approximately 24 hours, or they would be forced to respond to MRSB's motion for summary judgment. The O'Neills did not have an attorney at that time. Moreover, they were not planning to meet with an attorney until the following week, well after their deadline to respond to the motion for summary judgment. Therefore, it is disingenuous for the O'Neills to contend that they did not want or intend to be bound by the settlement agreement on the day they made the offer to MRSB.

Further, while MRSB did prepare a formal written settlement agreement and mutual release, the O'Neills have not demonstrated

any material term of the settlement that was not already agreed upon in the emails. For example, the only terms of the agreement that the O'Neills wanted altered dealt with specifically including their former attorneys' names in the release. This was not a material detail, and the O'Neills have failed to demonstrate that there was any material dispute related to this request. Moreover, the O'Neills did not place a condition on the contract to not be bound until the contract was reviewed by an attorney and signed. Where parties condition a contract on it being reduced to writing and signed, there is no enforceable contract until such act is accomplished. *Short v. Sunflower Plastic Pipe, Inc.*, 210 Kan. 68, 75, 500 P.2d 39 (1972). That is not the case here. In this case, the O'Neills contacted MRSB offering to dismiss the case in exchange for a mutual release. MRSB unconditionally accepted that offer which created a binding contract. It is clear from the record that the parties intended to be bound without a formal document and that the expected formal document was nothing more than a memorial of that contract.

*Special Consideration for Pro Se Litigants*

Finally, the O'Neills contend that this court should give them special consideration because they were acting pro se when they entered into the settlement agreement and release with MRSB. The O'Neills maintain that the court has a "duty to protect pro se litigants, as they are unskilled in legal matters and prone to errors." This court has stated the following concerning a pro se litigant:

"A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986).

The O'Neills' failure to preserve claims against MRSB or to condition the settlement agreement cannot be excused simply because they were pro se litigants. Moreover, Mr. O'Neill was a sophisti-

cated businessman who had already gone through three separate attorneys on this case. The O'Neills offered a settlement with MRSB in exchange for a mutual release, and MRSB accepted that offer. The O'Neills cannot expect to be excused from this binding contract simply because they were not represented by counsel when the contract was formed.

Here, the trial court ruled that the parties had entered into a settlement agreement and full mutual release. The trial court based this determination on the fact that Mr. O'Neill was a sophisticated businessman who initiated the email contact with MRSB, where the O'Neills offered a mutual release. The court found that MRSB immediately accepted the offer and stated that it related to "all" claims between the parties. The court stated that the O'Neills could have responded and said that they wished to preserve some claims, but they did not do that. Instead, the O'Neills responded: "Can you get me the release before the end of the day?" The trial court explained that a contract has nothing to do with the secret or personal intent of the parties: "I can't make my decisions on what the parties intended if that intent is different than what is stated. And, unfortunately, I certainly cannot enforce a contract based on what a party wished they had included in the terms." The writings and emails that passed between the parties contained all the elements of a completed contract. Thus, the trial court properly concluded that a settlement agreement and full mutual release had been reached. Moreover, this conclusion is supported by substantial competent evidence.

Because we have determined that the O'Neills entered into a binding settlement agreement and mutual release with MRSB, we do not need to address the O'Neills' remaining claim that the trial court erred in granting summary judgment in favor of MRSB. In agreeing to the mutual release, the O'Neills lost their right to challenge the trial court's decision to dismiss their slander of title and abuse of process claims against MRSB.

Affirmed.