NOT DESIGNATED FOR PUBLICATION

No. 116,967

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENNIS J. LORENZ and PAMELA LORENZ,
CO-TRUSTEES OF THE LORENZ LIVING TRUST
DATED JUNE 27, 2011,
*Appellees*,

v.

KIRK CODER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed August 11, 2017. Reversed and remanded with directions.

*Aaron R. Bailey*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellant.

*Michelle W. Burns*, of Property Law Firm, LLC, of Leawood, for appellees.

Before BRUNS, P.J., MCANANY, J., and STEVEN R. EBBERTS, District Judge, assigned.

*Per Curiam*: This case arises out of a dispute between neighbors over the use of a private roadway running across the plaintiffs' property which the defendant used to access his home on the adjoining property. The court held a settlement conference, at the conclusion of which a purported settlement was recited into the record. But when the plaintiffs sought to further memorialize the agreement with a written settlement agreement, the defendant objected that the writing did not accurately state the agreement

1

of the parties. The district court considered the matter, rejected the defendant's contentions, and accepted the settlement language proposed by the plaintiffs as an accurate memorialization of the parties' agreement. This appeal followed.

*Facts and Procedural History*

The plaintiffs are Dennis J. Lorenz and Pamela Lorenz, co-trustees of the Lorenz Living Trust, whom we refer to collectively and in the singular as "Lorenz." The defendant is Kirk Coder. Lorenz and Coder own adjoining tracts of land in the Paradise Lake development near Effingham. Coder owns the property to the north of the Lorenz property. A private gravel roadway, Leisurely Drive, runs east and west across the northern portion of the Lorenz property. The roadway is a few feet south of the property line that separates the Lorenz property from the Coder property. Leisurely Drive begins where it intersects a county road to the west and proceeds across the northern portion of the Lorenz property, crosses the dam at the south end of Paradise Lake, and then continues north on the east side of Paradise Lake where other residences are located. It ultimately encircles the lake and returns to the county road north of the lake.

Coder resides on the property he owns to the north of the Lorenz property. Lorenz resides in Shawnee, not on the property which is the subject of this suit.

There are two accesses from Leisurely Drive on the Lorenz property to Coder's property. The westerly access point crosses a few feet of the Lorenz property beyond the edge of Leisurely Drive before entering Coder's property near his garage. The easterly access point similarly crosses a few feet of the Lorenz property beyond the edge of Leisurely Drive before reaching the driveway that leads to Coder's home.

2

In September 2014, Lorenz sued Coder for trespass, conversion, and for declaratory relief. According to the Lorenz petition, beginning in 2007 Coder used Lorenz' private roadway without Lorenz' consent. Lorenz claimed that Coder removed trees, vegetation, a culvert, topsoil, and a utility pole on the strip of the Lorenz property between the private roadway and the south line of Coder's property and diverted water drainage from the Lorenz property, all without permission. Lorenz claimed that in 2014, Coder began to construct a driveway from the private drive to Coder's property, disregarding Lorenz' no-trespassing signs and barriers placed across the private drive on the Lorenz property. Coder claims the barrier was not across the private drive, but across one of the driveway access points from Leisurely Drive to Coder's property.

Coder answered the Lorenz petition with a general denial. At the court's case management conference in December 2014, District Judge Robert J. Bednar ordered the parties to participate in a settlement conference prior to trial.

In Coder's pretrial questionnaire in June 2015, he listed his theory of defense as "Adverse Possession and Common Ingress and Egress Road."

The parties participated in the settlement conference in October 2015, with Chief Judge David J. King presiding. Coder's position was that Leisurely Drive had been used by all of the lot owners in the Paradise Lake Development since the mid-1980s and that he himself used two access points from Leisurely Drive to access his property. At the conclusion of the conference, it appeared that a settlement had been reached and counsel for Lorenz recited the terms on the record.

"Your Honor, it's our understanding the agreement is that the *plaintiff will grant the defendant one access point across Plaintiff's property from what is existing as a leisurely drive*, at the point where the defendant has a garage on his property. And that

access easement will be for the width of that garage. The defendant will be responsible for obtaining a survey for a metes and bounds legal description for that access easement, and paying for that survey that will be the width of the garage.

"The parties will get together with the Atchison County Road and Bridge Superintendent to get his opinion on whether a culvert is necessary under that access easement, and if so, the necessary requirements for the size of the culvert and what it should entail. And if it is determined that the culvert's necessary, then the defendant will be responsible for the cost and construction of that culvert.

*"The defendant will not encroach on Plaintiff's property other than at the use of the actual drive, what is a leisurely drive, and the access point which will be the driveway easement.*

"And so, you know, *Defendant will remain on either the roadway or the access easement* instead of not being on Plaintiff's property. And I believe that's it." (Emphasis added.)

Coder's attorney concurred with Lorenz' counsel's description of the settlement agreement, and Dennis Lorenz and Coder stated on the record that they both understood the agreement. In discussing the details of the construction of the culvert, the parties agreed to a "reasonable time." Lorenz' counsel stated: "There's no rush in getting the culvert and all of that done. I think the primary issue's just that—using that point for access."

Judge King instructed counsel for Lorenz to prepare a draft of the settlement agreement and submit it to Coder. For some unexplained reason, it took many months for the settlement agreement to be signed. In the meantime, Coder apparently constructed a driveway on his property which he believed to be consistent with the settlement agreement. That new driveway linked the driveway leading to his garage to the driveway to the east which led to his house. This new driveway was parallel to Leisurely Drive but entirely on Coder's property and provided substitute access to Coder's house for the

4

easterly access point on Leisurely Drive that he understood he was giving up in the settlement.

When Coder received the draft settlement agreement, he refused to sign it. Lorenz took the position that Coder's use of Leisurely Drive was restricted to the portion that he needed to use to reach the agreed-upon access point to his property, which was the westerly access point closer to the county road and close to Coder's garage. To the contrary, Coder contended that while they had agreed he would limit his access from Leisurely Drive to the access point near his garage, he could continue to use Leisurely Drive to reach the lake as long as he did not stray from the roadway. He maintained that the parties' dispute was over the two access points from Coder's property to the roadway and that Coder had agreed to give up only one of those access points in the settlement agreement, not his ability to continue across Leisurely Drive on the Lorenz property in order to access that portion of Leisurely Drive that extended beyond the Lorenz property to Paradise Lake and beyond.

In August 2016, Lorenz moved to enforce the settlement agreement, proposing that the settlement agreement state in pertinent part:

> "2. Defendant shall not encroach or trespass on Plaintiff's Property or the Leisurely Lane [*sic*] other than to access his property from the northwest corner of Plaintiff's property to the drive providing access to Defendant's property on the southwest corner of Defendant's property. Defendant shall not be allowed to drive, walk or trespass on any portion of the Lorenz property, including Leisurely Lane [*sic*], with the exception of the northwest corner of Plaintiff's property to reach the access point to Defendant's property."

Coder opposed the use of this language and proposed that the agreement simply state verbatim what was recited on the record at the conclusion of the settlement

5

conference. Lorenz disagreed because some of the terms recited at the settlement agreement needed clarification in order to avoid future conflict and litigation between the parties. Lorenz claimed that ambiguities in the recitation of the settlement terms at the settlement conference would probably lead to future litigation.

Judge Bednar adopted Lorenz' proposed language for the settlement and directed Lorenz' counsel to prepare the journal entry. Coder was provided with a journal entry pursuant to Supreme Court Rule 170 (2017 Kan. S. Ct. R. 216) consistent with the court's ruling. Coder objected, and the court overruled Coder's objection and signed the journal entry.

Coder moved for reconsideration and supplied the court with aerial maps to support his argument, which the court considered at the hearing. He asserted "there is clearly a prescriptive easement for Defendant, all of the other lot owners, and the public, to use Leisurely Drive." Coder reiterated that the dispute was over the two access points over the Lorenz property to get from Leisurely Drive to Coder's property and that the agreement was to limit his access to the westerly point near his garage. He claimed there was no meeting of the minds on Lorenz' contention that Coder could not use Leisurely Drive beyond the westerly access point opposite his garage. He asserted that if the restriction on the use of Leisurely Drive was not removed from the settlement agreement, the litigation should continue. Judge Bednar denied Coder's motion, and this appeal followed.

*Contract Principles and Standard of Review on Appeal*

Settlement agreements are a type of contract. As such, the principles of contract law govern the enforcement and interpretation of settlement agreements. *Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins. Co.*, 40 Kan. App. 2d 123, 129, 190 P.3d 989

(2008). As with all contracts, a settlement agreement is formed only if there is agreement as to all important, or material, terms. See *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 488, 15 P.3d 338 (2000). To form a binding settlement agreement, there must be a meeting of the minds on all of the material terms of the parties' bargain and a manifestation of an intention to be bound by these terms. If there are any nonmaterial discrepancies, they can be resolved by the court, consistent with the parties' intent, if the parties have agreed upon the material terms. See *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, Syl. ¶ 4, 286 P.3d 542 (2012); *O'Neill v. Herrington*, 49 Kan. App. 2d 896, Syl. ¶ 4, 317 P.3d 139 (2014), *rev. denied* 301 Kan. 1047 (2015). In determining the parties' intention to form a contract, courts focus "'not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract.' [Citation omitted.]" *Southwest & Assocs., Inc. v. Steven Enterprises*, 32 Kan. App. 2d 778, 781, 88 P.3d 1246 (2004).

The parties are bound by an oral settlement agreement if that was their intent, even though they contemplated executing a more formal instrument at a later date. *U.S.D. No. 446*, 295 Kan. at 295; *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 735, 512 P.2d 379 (1973). This is because settlement agreements do not have to be in writing to be enforceable, as the law recognizes oral settlement agreements. See *Connor v. Hammer*, 201 Kan. 22, 439 P.2d 116 (1968). A transcript of the attorneys' recital of the terms of the agreement is a sufficient memorandum evidencing the parties' agreement. *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 408, 166 P.3d 440, *rev. denied* 285 Kan. 1174 (2007) (citing Restatement [Second] of Contracts §136 [1979]). The efficacy of such a recital on the record is not dependent upon a later, more formal instrument. *Phillips & Easton Supply Co., Inc.*, 212 Kan. at 735.

Kansas law supports the enforcement of settlement agreements. *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 202-03, 785 P.2d 1367 (1990). This is particularly so when the

settlement involves pending litigation. *In re Estate of Thompson*, 164 Kan. 518, 528, 190 P.2d 879 (1948); *O'Neill*, 49 Kan. App. 2d at 903.

Our role in all of this is to determine whether the district court's findings of fact regarding the formation of a binding contract are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law regarding the agreement of the parties. *Baraban v. Hammonds*, 49 Kan. App. 2d 530, 539, 312 P.3d 373 (2013), *rev. denied* 300 Kan. 1103 (2014). But whether a contract is ambiguous is a question of law for us to decide. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, Syl. ¶ 2, 754 P.2d 803 (1988). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). Regardless of the district court's construction of the purported agreement, we may construe the contract ourselves and determine its legal effect. 250 Kan. 676, Syl. ¶ 3.

*Discussion*

While courts naturally favor an amicable resolution of litigated disputes rather than subjecting the parties to the rigors and expense of trial, we are not in the business of forcing parties into settlements when there is none. Based upon our review of the record here, the negotiations between Lorenz and Coder are better characterized as resulting in ships passing in the night rather than a meeting of the minds.

The characterization of the agreement at the conclusion of the settlement conference was vague, ambiguous, and subject to conflicting interpretations of its fundamental terms. Lorenz' counsel stated the relevant terms as follows:

8

"Your Honor, it's our understanding the agreement is that the *plaintiff will grant the defendant one access point across Plaintiff's property from what is existing as a leisurely drive, at the point where the defendant has a garage on his property.* And that access easement will be for the width of that garage. The defendant will be responsible for obtaining a survey for a metes and bounds legal description for that access easement, and paying for that survey that will be the width of the garage.

. . . .

*"The defendant will not encroach on Plaintiff's property other than at the use of the actual drive, what is a leisurely drive, and the access point which will be the driveway easement.*

"And so, you know, *Defendant will remain on either the roadway or the access easement* instead of not being on Plaintiff's property. And I believe that's it." (Emphasis added.)

While Coder agreed with this recital of the agreement, it is clear that he construed fundamental ambiguities in the agreement in an objective manner entirely inconsistent with how Lorenz viewed the agreement.

To get to his home from the county road required Coder to use Leisurely Drive across Lorenz' property and then turn north across a few feet of Lorenz' property into his own property at one of two access points: the driveway to his garage or the driveway to his house. The agreement recited at the settlement conference limits this access to the driveway leading to his garage.

The agreement further provides: "The defendant will not encroach on Plaintiff's property other than at the use of the actual drive, what is a leisurely drive, and the access point which will be the driveway easement." A reasonable and objective reading of this provision is that Coder has to stay on Leisurely Drive and can only leave it to cross over to his property at the access point which has

9

already been defined as "the point where the defendant has a garage on his property."

Finally, the recited agreement provides that "Defendant will remain on either the roadway or the access easement instead of not being on Plaintiff's property." Disregarding the word "not," which appears to have been a mere verbal hiccup, a reasonable and objective reading of this provision is that, consistent with the prior provision, Coder must stay either on Leisurely Drive or on the access easement from Leisurely Drive across the short strip of the Lorenz property to Coder's driveway. The agreement does not prohibit Coder from proceeding on Leisurely Drive towards the Paradise Lake dam, so long as he does not leave the roadway and cross the Lorenz property at some other point along the way, such as the former access point leading to Coder's house.

While certainly not controlling but consistent with this reading of the agreement, before the dispute arose over the wording of the written settlement agreement Coder constructed a separate drive on his own property parallel to Leisurely Drive that connected the agreed access point at his driveway to the drive that led to his house which he could no longer use from Leisurely Drive.

Coder's interpretation of the agreement as recited at the settlement agreement is objectively reasonable and yet at complete odds with Lorenz' understanding of the parties' agreement. According to Lorenz, the parties agreed that Coder would have no access to Leisurely Drive beyond the driveway access point near Coder's garage. The ambiguity in the recited agreement does not relate to minor, side issues which the court could fill in as part of construing the agreement. The ambiguity goes to the fundamental nature of the agreement. Lorenz conceded that terms recited at the settlement agreement needed clarification in order to avoid future litigation. He predicted that without the

10

court's intervention in what we would now characterize as essentially rewriting the agreement between the parties, there probably would be future litigation between the parties.

Under these circumstances, we fail to find substantial evidence to support the district court's finding that Lorenz and Coder had a meeting of the minds that resulted in a binding settlement agreement. From this it logically follows that there was insufficient evidence to support the district court's conclusions of law regarding the terms of the purported agreement of the parties. Accordingly, we must reverse and remand the case for either another attempt at settlement or for trial.

Reversed and remanded for further proceedings.