NOT DESIGNATED FOR PUBLICATION

No. 117,924

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

B.E.,
*Appellant*,

v.

G.G.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TIMOTHY G. LAHEY, judge. Opinion filed August 31, 2018. Affirmed.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*Bradley J. LaForge* and *Mason D. Lent*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM:  B.E. sued G.G. for personal injury. In response, G.G. counterclaimed against B.E. for personal injury. In February 2017, B.E.'s counsel proposed a mutual release of all claims. Counsel for G.G. agreed and prepared a mutual release to settle all claims. After some apparent vacillation, B.E. signed the mutual release on February 13, 2017. G.G. acknowledged his acceptance of the mutual release the next day. Later, B.E.'s counsel notified G.G.'s attorney that B.E. wished to set the

1

mutual release agreement aside. G.G. moved to judicially enforce the mutual release settlement agreement.

The trial court held a hearing on the motion to enforce the mutual release agreement. The mutual release, which included B.E.'s signature, along with the e-mails confirming mutual assent to the release, was entered into evidence. When B.E. alleged that she had never signed the release but rather signed some other unidentified document, and that her signature was then fraudulently attached to the settlement agreement by her attorney, the trial court set the matter for an evidentiary hearing.

During the evidentiary hearing, the trial court reviewed the documents and heard testimony from Tony Atterbury, B.E.'s former attorney; Barbara Cooper, the legal assistant of B.E.'s former attorney; and B.E. The focus of the hearing was whether B.E. knowingly signed the mutual release. After examining all the evidence, the trial court held that B.E. had knowingly signed the mutual release in the absence of fraud or bad faith. Thus, B.E. was bound by the terms of the mutual release.

On appeal, B.E. no longer denies signing the mutual release. Moreover, she no longer alleges that her signature was transferred from another document. Instead, for the first time B.E. alleges the following: (1) that her former attorney did not have authority to orally bind her to the mutual release and (2) that her former attorney committed malpractice and then fraudulently enticed her to sign the mutual release to conceal his negligence.

Despite B.E.'s claims on appeal, if there is substantial competent evidence to support the trial court's holding that the parties entered into a mutual release agreement, absent fraud or bad faith, the parties are bound by the mutual release agreement. We determine that there is substantial competent evidence to support the trial court's holding that the parties entered into the mutual release agreement in the absence of fraud

2

or bad faith. Therefore, we conclude that the parties are bound by the mutual release agreement. Accordingly, we affirm.

B.E. tested positive for HIV in September 2014. In July 2016, B.E. hired Bradley A. Pistotnik and Tony L. Atterbury as counsel and sued G.G. for giving her the disease. B.E.'s suit claimed the following: negligence, infliction of emotional distress, outrage, breach of a duty not to transmit the HIV virus, failure to warn of HIV status, failure to warn of a sexually dangerous lifestyle, and other negligent and careless actions and omissions of conduct. In her petition, B.E. claimed that G.G. allegedly admitted to B.E. that while in Thailand, he engaged in unprotected sexual intercourse with male and female prostitutes. G.G. also allegedly admitted that he had tested positive for HIV and asked B.E. if she "wanted to go through it together."

Atterbury testified that he filed B.E.'s petition as a verified petition because the statute of limitations was about to run and he could not, in good faith, verify the claims before the expiration of the statute of limitations.

G.G. hired Bradley J. LaForge as counsel, and LaForge filed an answer and counterclaim. G.G. claimed negligence, negligent infliction of emotional distress, defamation, violation of right to privacy, outrageous and abusive conduct, and abuse of process. G.G. admitted going to Thailand but denied having unprotected sex with prostitutes while there.

LaForge sent Atterbury a draft of a mutual release agreement on February 8, 2017. Barbara Cooper, Atterbury's legal assistant, e-mailed LaForge on February 14, 2017, asking LaForge to notify Atterbury's office of G.G.'s acceptance of the proposed draft. The same day, LaForge notified Atterbury's office that G.G. had accepted the draft of the mutual release agreement. On February 17, 2017, LaForge asked if B.E. had accepted the mutual release agreement. Atterbury responded the same day and told LaForge that B.E.

3

had signed the agreement. Cooper sent the signed agreement to LaForge on February 23, 2017. An e-mail dated March 8, 2017, from Atterbury to LaForge stated:

> "As we just discussed, [B.E.] has indicated she does not want to proceed with dismissing this case and will not agree at this time to settle her claims. It is my understanding you have not yet obtained a signature from [G.G.] on the Mutual Release. We no longer represent [B.E.] but it is my understanding she has obtained new counsel. I do not know who she has retained, if I learn of their identity I will forward it on to you. We intend to file a motion to withdraw in the near future."

LaForge responded to the e-mail and notified Atterbury that he would object to his departure from the case and would also move to enforce the mutual release agreement. LaForge also attached a copy of the agreement signed by G.G.

Atterbury and Pistotnik moved to withdraw as B.E.'s counsel on March 10, 2017. The trial court granted the motion on March 17, 2017.

G.G. moved to enforce the mutual release agreement on March 14, 2017. The trial court continued the hearing on the motion to give B.E. a chance to hire new counsel. B.E. did not hire new counsel and represented herself pro se. B.E. argued that she never intended to enter into a settlement agreement. Instead, B.E. asserted that she signed a piece of paper which Atterbury later attached to the agreement. B.E. claimed that she thought she was signing a consent form to allow Atterbury and Pistotnik to withdraw as her attorneys. B.E. also noted that her attorneys showed her a "typed paper of a letterhead HIV in 2013 being negative." B.E. was seemingly referencing negative HIV results for G.G., dated sometime in 2013 which B.E. argued was a forged medical document.

After hearing arguments by both parties, the trial court noted that the mutual release had both B.E.'s and G.G.'s signatures. B.E. seemingly signed the release on February 13, 2017, and G.G. signed the release on March 9, 2017. Nevertheless, the trial

4

court acknowledged that because B.E. was making a factual defense to the release, it would schedule an evidentiary hearing for April 21, 2017, to resolve the matter. The trial court encouraged B.E. to hire an attorney to represent her at the evidentiary hearing.

The evidentiary hearing was continued to May 12, 2017. B.E. did not hire new counsel but appeared in person and again represented herself pro se. G.G. was represented by LaForge and Mason Lent. G.G. called Atterbury and Cooper to testify. The trial court allowed B.E. to give a statement on her own behalf.

Atterbury testified first. Atterbury expressed his concern about testifying due to B.E.'s attorney-client privilege and the trial court's order to seal the proceedings. The trial court then told B.E. that she had an existing attorney-client privilege with Atterbury. B.E. then orally waived that privilege and allowed Atterbury to answer all of LaForge's questions.

Atterbury explained that when B.E. came to him requesting representation, he thought the statute of limitations was about to run. So Atterbury filed a verified petition because he was unable to verify B.E.'s claims. Atterbury testified that after reviewing the medical records and getting into discovery, he decided that he could no longer pursue the case. Atterbury stated: "At some time prior to February 3rd, 2017, I determined that there were causation issues with the case. Determined that, from what I could tell . . . I felt that I could not in good faith bring the claims." Atterbury explained that G.G.'s medical records showed that G.G. tested negative for HIV in 2013. Atterbury testified that on February 3, 2017, he showed B.E. a doctor's note that explained G.G.'s HIV results.

After showing B.E. the medical results and explaining the "causation issues" associated with them, Atterbury told B.E. that he would withdraw as counsel. Atterbury told B.E. that he would help her enter into a mutual dismissal of the case, if she agreed to do that. B.E. then agreed to enter into the mutual dismissal. Because B.E. was, as

Atterbury testified, understandably upset, he told her to take the weekend to think about it. When Atterbury did not hear from B.E. by Monday, he began communicating with LaForge to draft a mutual release agreement.

Atterbury testified that B.E. no longer wanted to go through with the release on February 9, 2017, and she claimed to have retained new counsel. An e-mail from Cooper to Atterbury on February 10, 2017, stated: "Client called yesterday afternoon. Said she would meet with you but she is not closing the case." Atterbury contacted Cooper on February 10 asking her for B.E.'s new attorney's contact information.

According to Atterbury, B.E. again changed her mind and decided to go through with the agreement on February 13, 2017. Atterbury testified that on February 13, 2017, he read through the mutual release with B.E. before B.E. signed the release. Atterbury testified that there was no question that B.E. was signing an agreement to mutually dismiss the case with prejudice because there was no other agreement discussed that day. Atterbury also testified that Cooper was present when B.E. signed the agreement and that Cooper notarized her signature.

Cooper testified that she was present when B.E. agreed to enter into a mutual release agreement on February 3, 2017. Cooper also testified that she was present on February 13, 2017, when Atterbury went through the agreement with B.E. Cooper also witnessed B.E. sign the mutual release and acted as the notary for her signature.

B.E. testified that she "didn't remember seeing the mutual agreement" and did not sign it. B.E. further testified that she left Atterbury's office on February 3, 2017, under the impression that he was no longer going to represent her and that she needed to find new counsel. On February 8, B.E. e-mailed Atterbury's office to request that he send all of her documents to another attorney. In that e-mail, B.E. did not specifically mention an

6

agreement for dismissal. B.E. argued that her lack of indication to the agreement implied that she had no knowledge of the agreement.

The trial court granted G.G.'s motion to enforce the mutual release agreement and dismissed the case with prejudice. The trial court explained to B.E. that "'[t]he law favors the compromise and the settlement of disputes, and when the parties in the absence of any elements of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate.'" The trial court held that no fraud was committed and that B.E. voluntarily agreed to and signed the mutual release agreement.

*Did the Trial Court Err in Enforcing the Mutual Release Agreement?*

B.E. expressly concedes that substantial competent evidence exists supporting the trial court's finding that B.E. knowingly signed the mutual release. Nevertheless, B.E. maintains that elements of fraud and bad faith were present in the procurement of the mutual release settlement agreement. B.E., therefore, argues that this court should set aside the mutual release agreement.

We, however, are called on to determine whether there is substantial competent evidence to support the trial court's holding that the parties entered into a mutual release in the absence of fraud or bad faith.

Once entered into, settlement agreements should be enforced absent a finding of fraud or bad faith. *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 203, 785 P.2d 1367 (1990). Normally, whether a contract exists is a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). Fraud is also normally a question of fact. *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004). Thus, upon appeal, this court's standard of review is limited to determining whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to

7

support the trial court's conclusions of law. *McGehee*, 277 Kan. at 403; *Hodges v. Johnson,* 288 Kan. 56, 65, 199 P.3d 1251 (2009); *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 902-03, 317 P.3d 139 (2014). "Substantial competent evidence is 'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.' [Citation omitted.]" *Wiles v. American Family Life Assurance Co*., 302 Kan. 66, 73, 350 P.3d 1071 (2015). Appellate courts must accept the trial court's factual findings if they are supported by substantial evidence. *Baraban v. Hammonds*, 49 Kan. App. 2d 530, 539, 312 P.3d 373 (2013).

Contracts are presumed legal. The burden lies on the party challenging the contract to prove it is illegal. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 257, 225 P.3d 707 (2010).

The trial court made these findings of fact:

"1.     On July 26, 2016, Plaintiff filed her Petition.
"2.     On September 6, 2016, Defendant filed his Answer and cross-claim.
"3.     Following the exchange of written discovery, on February 6, 2017, counsel for the parties discussed a mutual resolution of the matter.
"4.     On February 10, 2017, defense counsel provided Plaintiff's counsel a proposed *Mutual Release, Settlement and Confidentiality Agreement*.
"5.     On February 13, 2017, Plaintiff signed the Agreement before a notary.
"6.     The Plaintiff's signature was not obtained through fraud or bad faith.
"7.     On February 14, 2017, Defendant, through his counsel, confirmed acceptance of the Agreement."

The trial court granted G.G.'s motion to enforce the mutual release agreement. In doing so, the trial court stressed our Supreme Court's preference for settlements as opposed to litigation. The trial court also held that the parties entered into a valid agreement on February 14, 2017.

Both parties agree that the trial court's factual findings were supported by substantial competent evidence. B.E., however, maintains that fraud and bad faith existed generally in the proceedings below, which now requires reversal of the trial court's decision. In making this argument, B.E. points to Atterbury's failure to disclose an expert before the due date for such disclosure. B.E., in essence, argues that Atterbury was deficient in his representation of her.

G.G. argues that B.E. is seeking to make a negligence or malpractice claim against Atterbury. G.G. also asserts that B.E. makes this argument for the first time on appeal and, therefore, failed to preserve this issue.

At the evidentiary hearing, B.E. did, in essence, argue that Atterbury was deficient: "I think the whole thing is sloppy. And I think that there [are] so many discrepancies throughout the whole [case]." She did not, however, specifically argue that Atterbury's negligent representation caused her to sign the mutual release agreement. Generally, issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). B.E. does not argue that an exception exists which would allow this court to review her unpreserved issue.

Moreover, at the evidentiary hearing, the trial court was first presented with a copy of the mutual release agreement itself. The mutual release agreement evidences a clear intent to mutually dismiss all the parties' claims. B.E. signed the agreement and Cooper notarized B.E.'s signature. G.G.'s attorney accepted the agreement on February 14, 2017. G.G. then signed the agreement on March 9, 2017. Atterbury's and Cooper's testimony supported G.G.'s claim that B.E. knowingly and voluntarily entered into the agreement. B.E.'s testimony that she did not see the agreement was refuted by Atterbury's and Cooper's testimony.

9

Additionally, Kansas courts prefer that parties settle their disputes rather than engage in litigation. See *Herrington*, 49 Kan. App. 2d at 903. Once one party has made a settlement offer and the other party has unconditionally accepted it, neither party may call off the agreement. *Connor v. Hammer*, 201 Kan. 22, 24, 439 P.2d 116 (1968).

Atterbury approached B.E. with at least two options to resolve her pending case. One option was to allow Atterbury to withdraw as her attorney and she would then move forward with new counsel. The other option was to join G.G. in a mutual release, which Atterbury would secure before withdrawing as her attorney. B.E. chose the latter option. Atterbury read and explained the material terms of the agreement to B.E. before she signed the agreement. Thus, the evidence supports the trial court's holding that B.E. understood the agreement and knowingly agreed to mutually dismiss all pending claims.

Because there was no evidence presented of fraud or bad faith by either party, the trial court's holding was supported by substantial competent evidence. As a result, B.E.'s argument to set aside the mutual release between the parties fails.

Moreover, because we have concluded that the parties are bound by the mutual release agreement, it is unnecessary for us to address the previous mentioned contentions of B.E.

Affirmed.