NOT DESIGNATED FOR PUBLICATION

No. 126,083

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

COLLEEN CHANDLER,
*Appellee*,

and

BRADLEY CHANDLER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Submitted without oral argument. Opinion filed January 12, 2024. Affirmed.

*Bradley Chandler*, appellant pro se.

*Amy E. Elliott*, of Law Office of Amy E. Elliott, of Overland Park, for appellee.


Before MALONE, P.J., GARDNER and CLINE, JJ.


PER CURIAM: This dispute arises out of the district court's division of personal property in a divorce proceeding. After the court found Bradley Chandler sold marital property without properly accounting for the proceeds, it entered a judgment against Bradley and in favor of his ex-wife, Colleen, for half the value of that property. It also ordered Bradley to pay Colleen's attorney fees and the fees of the special master appointed to sell certain marital property. Bradley challenges these decisions by contending they were based on factual errors.

1

Having carefully reviewed the record and arguments of the parties, we find Bradley has not satisfied his burden to show the district court erred. We therefore affirm its judgment and fee order.

FACTS

After a 13-year marriage, the parties separated and Colleen filed for a divorce. At that time, the district court issued temporary orders which, among other things, prohibited the parties from selling or otherwise disposing of marital property. The district court held a divorce trial on November 12, 2020.

In mid-December 2020, the district court filed a decree of divorce and orders dividing the marital property and debts. This appeal involves its division of guns, collectible coins, gold, and silver owned by the parties. The court directed these items to be sold with the proceeds equally divided between the parties. It ordered Bradley to provide receipts of sales to Colleen for any gold and silver he already sold, and it directed the parties to select an independent appraiser and reseller to appraise and sell certain guns. After the parties could not agree on an appraiser, the court appointed a special master to "resolve the division of personal property and the sale of firearms," with the cost to be equally split between the parties.

Eventually, a dispute arose over the location and disposition of certain guns, gold, and coins owned by the parties during their marriage. The special master determined Bradley had not accounted for all the guns and that he admitted selling guns and coins because he needed money. Colleen and the special master also reported that Bradley never provided them an accounting or receipts for gold or silver Bradley admitted selling after being served with the temporary orders. The special master reported that "[o]f the photographs of gold and silver which were to be sold, I have only been able to locate 58 half-dollars (face value of $29.00)."

2

In July 2022, Colleen moved to enforce the district court's decree and orders. She asked to be compensated for one-half of all items Bradley sold in violation of the court orders and for an accounting of all gold and silver Bradley sold in violation of those orders. She also asked the district court to order Bradley to pay her attorney fees and to reapportion the special master's additional expenses. Colleen claimed the additional expenses were caused by Bradley's conduct in frustrating the special master's attempt to accomplish the division of property and sale of guns ordered by the court.

At the hearing on Colleen's motion, the district court ordered Bradley to file an affidavit detailing the guns and coins he sold along with the amount received from the sales. Ten days later, Bradley filed a 7-page affidavit with 40 pages of attachments.

Bradley's affidavit is confusing and argumentative, and the import of the attachments in answering the district court's question is difficult to discern. It is in large part nonresponsive in that he mostly complains about the special master—claiming she retaliated against him for questioning her findings—and explains why he felt entitled to sell certain guns and take certain actions during the divorce proceedings. At one point, he itemizes the value of 14 guns he claims to have sold before receiving the court's temporary orders. In paragraph No. 15, he lists the sale prices of seven other guns which he claims "were sold" but provides no sale dates.

Bradley provides no accounting of any gold or coins he sold in his affidavit. Instead, he claims at one point that he e-mailed Colleen and told her he sold all the gold/silver and several guns before being served with the petition for divorce and temporary orders. Later in his affidavit, he claims he provided Colleen and the special master "the requested additional receipt after trial" and an offer to "settle gold/coins but also guns/ammo."

A few months later, the district court issued its findings and order on Colleen's motion. Citing Bradley's trial testimony and assertions in his affidavit, the court found that Bradley admitted he sold several guns, gold, and collectible coins—both before and after being served with the temporary orders. It also found Bradley had not provided a reliable estimation of the value of the gold and collectible coins in his possession, nor did he provide evidence about what happened to these items. It pointed out that Bradley estimated the value of the coins to be at least $4,500 in his property division worksheet, but Bradley only provided $29 worth of coins to the special master. It also noted that Colleen estimated the value of the gold and coins to be $40,000 in her property division worksheet.

The district court noted discrepancies between Bradley's trial testimony and the allegations in his affidavit regarding the timing of the gun sales. It found Bradley either misspoke at trial, leading the court to believe guns were available for sale which were not, or he intentionally tried to mislead the court into thinking the guns existed so they would be appraised at a reduced value in the division of property. Either way, the court found Colleen did not receive the full value of the court's intended property division. It also found avoidable special master fees were incurred, presumably due to Bradley's actions. It granted Colleen judgment against Bradley for $3,102, which the court estimated as half the value of the missing guns and gold or coins and ordered Bradley to be solely responsible for the special master's fees. It later awarded Colleen her attorney fees in the amount of $750.

Bradley appeals these decisions, claiming the district court misinterpreted the information in his affidavit and mistakenly found he had sold guns, gold, and coins after being served with temporary orders. While he does not question the amount of any of the awards, he contends the judgment of $3,102 should be set aside because it was based on this factual error, and the orders to pay the fees of the special master and Colleen's attorney should be set aside because they flow from this factual error.

ANALYSIS

District courts have broad discretion when adjusting the property rights of the parties involved in a divorce action. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). The standard of review for property division issues is abuse of discretion. *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 340, 869 P.2d 240 (1994). A district court's ruling will be disturbed only if there is a clear showing of abuse. 19 Kan. App. 2d at 340. Abuse of discretion occurs when the district court issues its decision "based on a legal or factual error or if no reasonable person would agree with the court's decision." *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). Bradley, as the party asserting a factual error, bears the burden of demonstrating the district court abused its discretion. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480, 193 P.3d 504 (2008).

While Bradley's brief is difficult to decipher, he appears to attack the district court's factual findings by arguing it misinterpreted his affidavit. To the extent the real thrust of his argument presents a challenge to the district court's factual finding, we review such findings for substantial competent evidence. *Price v. Grimes*, 234 Kan. 898, 904, 677 P.2d 969 (1984); *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 903, 317 P.3d 139 (2014). Substantial competent evidence is evidence which possesses both relevance and substance. *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014).

*Did the district court err in determining paragraph No. 15 of Bradley's affidavit listed guns Bradley sold?*

To begin, Bradley disputes the district court's interpretation of paragraph No. 15 in his affidavit, which read:

> "There were several guns that were not pictured, nor entered into evidence but were sold, it was my understanding from the *Ruling* that only the guns entered into

evidence should be sold; those guns were: 2-Mosin Nagants w/Bayonet sold for $450 each, 22 LR Savage Model 64 sold for $150, Ruger 10/22 22LR sold for $300, Chiappa 22LR pistol sold for $125, and Henry Lever Action sold for $700; for a total of $2,175."

Bradley contends he never said he was the one who sold the guns mentioned in that paragraph. He now contends the special master was the one who sold those guns.

The first problem with Bradley's argument is it relies on a repackaging of the information in his affidavit which was not provided to the district court. This court does not make fact-findings or engage in de novo review of a reformed affidavit. See *State v. Garcia*, 297 Kan. 182, 187-88, 301 P.3d 658 (2013). Instead, this appeal is Bradley's opportunity to explain why the district court erred based on the information the court had before it at the time. We cannot fault the district court's decision based on new or different information which Bradley now offers on appeal.

Because Bradley offers new explanations of the information in his affidavit on appeal, his arguments are unpreserved. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (When a litigant making an argument for the first time on appeal fails to explain why an exception should apply, an appellate court may consider it abandoned as improperly briefed.). His pro se status does not allow him to ignore appellate procedures. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022). Thus, we must look at the information presented to the district court to determine whether its ruling was in error.

The district court ordered Bradley to file an affidavit detailing the guns and coins he sold along with the amount received from the sales. It was reasonable to interpret paragraph No. 15 of Bradley's affidavit as his answer to that question. Nowhere do the assertions in that paragraph mention the special master or suggest anyone other than

Bradley sold the referenced guns. Considering the court's very specific instructions, we do not find it misinterpreted his affidavit.

Further, the record citations that Bradley relies on to prove his reinterpretation of the affidavit are not supportive. First, he contends the guns mentioned in paragraph No. 15 were all in Colleen's possession after the issuance of the temporary orders. But the record citations he relies on—which include portions of the divorce petition, the district court's temporary orders, and the court's recitation of its division of the property and debts, and maintenance and child support orders—provide no evidence of this assertion.

As for Bradley's claim that the special master sold these guns, the only evidence he cites are 6 of the 40 pages of exhibits he attached to his affidavit, which he identified collectively as "Exhibit 19." These pages consist of (1) an e-mail from Bradley to the special master, claiming some ammunition was unaccounted for; (2) a document which appears to list at least a portion of someone's professional and educational experience, (3) contact information for a countertop business; (4) an internet listing of the price for one box of a type of ammunition; (5) a list of 13 guns with prices for each and some handwritten notes; and (6) another list of the same 13 guns but with different prices and which identifies some guns as "sold" with a first name beside each "sold" reference." On their face, these documents do not support Bradley's assertions.

Bradley also explains these documents differently to us than he did to the district court. He now claims these documents listed guns the special master intended on selling. But, in his affidavit, he cited these documents to support his assertions that the special master undercounted the amount of ammunition that should be considered marital property and that she offered more favorable prices when selling the ammunition to her friends than the prices she offered Bradley's father. Nowhere in Bradley's affidavit did he claim, as he now does, that these documents show the special master, and not Bradley, sold the guns at issue. Even the two lists of guns (the only pages of this exhibit which

7

mentions guns) do not reference the special master or specify who sold any guns or when they were sold.

As a general rule, we will not consider claims which have never been presented to the district court for a ruling. See *State v. Paredes*, 34 Kan. App. 2d 346, 348, 118 P.3d 708 (2005). And while there are exceptions to this rule, Bradley does not invoke them. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (Within its discretion, an appellate court may consider a newly raised argument if the party trying to raise the new argument shows that a recognized exception applies.) We therefore consider these arguments unpreserved as well.

Bradley relies solely on paragraph No. 15 of his affidavit to support his claim that the special master sold the guns, not him. And while he now claims the two lists of guns he attached to the affidavit support that claim, he never associated those lists with paragraph No. 15 of his affidavit. It is unreasonable to expect the district court to make that connection, especially given that Bradley attached 40 pages of exhibits to his affidavit and never associated any of them with the allegations in his paragraph No. 15. Bradley cannot expect the district court to "'play archeologist with the record,'" requiring it to "search[] for buried treasure." See *Joritz*, 61 Kan. App. 2d at 483, 501 (quoting *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 [7th Cir. 1999]). Nor can courts "'assume the role of advocate or search the record and construct arguments for a pro se litigant.'" *Joritz*, 61 Kan. App. 2d at 499.

Next, Bradley fails to acknowledge that the district court compared his affidavit to his trial testimony and took both into account in rendering its decision. It found his explanations about the sales were not credible and pointed out several discrepancies. Bradley does not address any of these discrepancies and, even if he did, we cannot reweigh his credibility on appeal. See *Garcia*, 297 Kan. at 187-88.

District courts have substantial discretion when determining property rights in a divorce proceeding. *In re Marriage of Wherrell*, 274 Kan. at 986. We do not find the district court abused its discretion here. Bradley provided a rambling and disjointed response to a simple question. We cannot consider his reformatted response on appeal, nor do we find it supported by the record. We find the district court's factual findings are supported by substantial competent evidence in the record—namely, Bradley's trial testimony and his affidavit. We therefore see no basis to overturn the district court's decision.

*Did the district court err in determining Bradley's affidavit did not provide information about the sale of gold/coins?*

The second factual error Bradley claims the district court made was its conclusion that Bradley did "not submit any information regarding gold/coins." The district court found that Bradley "provided no evidence as to what happened to the gold and coins" in his affidavit.

On appeal, Bradley states he "clearly references the issue of the amount sold for the gold/coins . . . not only once in his answer to [Colleen's] Motion, but a second time also with his affidavit." Bradley provides no record citation for where he provided this information, and we do not find it in his affidavit. Any material statement made without a reference to the record on appeal's volume and page number "'may be presumed to be without support in the record.'" *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010) (quoting Supreme Court Rule 6.02[d] [2010 Kan. Ct. R. Annot. 39], now Supreme Court Rule 6.02[a][1][B][4] [2023 Kan. S. Ct. R. at 36]). And, again, it is not our responsibility to scour the record or construct an argument for Bradley. See *Joritz*, 61 Kan. App. 2d at 499.

Since we do not find the district court erred in determining Bradley did not provide the requested accounting in his affidavit for the gold or coins he admitted selling, we do not find Bradley has met his burden to show the district court's judgment should be overturned on this basis.

*Did the district court abuse its discretion in requiring Bradley to pay the special master's fees and Colleen's attorney fees?*

Bradley does not argue the awarded amounts are unreasonable. In fact, the full extent of his briefing on this issue consists of one sentence: "Had the court acknowledged facts that Mr. Chandler presented within his affidavit, he would have been cleared of no wrongdoing, thus no further penalty of being solely responsible to pay [the special master's] fees would apply, nor would there be an award of attorney fees." We do not find this statement rises to the level of an appellate argument and therefore find it abandoned. Further, our determination that the district court did not base its judgment on factual errors undercuts Bradley's position on this issue. We find Bradley did not satisfy his burden to show the court erred in awarding Colleen her fees and the special master fees.

CONCLUSION

The district court asked Bradley a straightforward question but did not receive a straightforward answer. We are an error-correcting court, not a fact-finding one. And we cannot find the district court made a factual error based on facts that were not presented (or that were presented in a different way) at the time it made its decision.

Affirmed.

10