No. 120,123

# IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KAREN SCHMITENDORF,
*Appellant*,

v.

DEBORAH TAYLOR, as Trustee of
the V. LOUISE PARK REVOCABLE LIVING TRUST; and
DEBORAH TAYLOR, Individually,
*Appellees*.

## SYLLABUS BY THE COURT

1.

In an appeal from a district court's ruling on a summary judgment motion, appellate courts consider the motion de novo and apply the standards set forth in K.S.A. 2019 Supp. 60-256(c)(2).

2.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

3.

As authorized by K.S.A. 59-102(8), a family settlement agreement is "a written and acknowledged instrument which affects the administration or distribution of [an] estate and which is entered into by all interested heirs, devisees, legatees and persons whose interests are affected by the settlement agreement, all of whom must be competent or authorized to enter into such agreement."

1

4.

The law of contracts governs the enforcement and interpretation of family settlement agreements. Like other contracts, the primary rule for interpreting a family settlement agreement is to ascertain the parties' intent. If the terms of the family settlement agreement are clear, the intent of the parties is to be determined from the language used without applying rules of construction.

5.

Kansas law favors the settlement of legal disputes. When parties enter into a family settlement agreement resolving a dispute relating to the administration or distribution of an estate, neither party is permitted to repudiate the settlement absent bad faith or fraud. Hindsight, buyer's remorse, or other after-the-fact impulses cannot invalidate a family settlement agreement.

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed June 19, 2020. Affirmed.

*Jeffrey R. King*, of Sage Law LLP, of Overland Park, for appellant.

*Geri L. Hartley*, of Paola, for appellees.

Before BRUNS, P.J., GREEN, J., and TIMOTHY J. CHAMBERS, District Judge, assigned.

BRUNS, J.:  This case arises out of an ongoing family dispute over the disposition of the V. Louise Park Revocable Living Trust. Karen Schmitendorf brought this action against the trust, and against the trustee—Deborah Taylor, individually. The district court granted summary judgment in favor of Taylor on the basis that a Family Settlement Agreement entered into by Schmitendorf and Taylor to resolve prior litigation precluded the claims asserted in this case. Based on our review of the unambiguous terms of the

Family Settlement Agreement entered by the parties, we agree with the district court and affirm its decision.

FACTS

Schmitendorf and Taylor were first cousins once removed to Vera Louise Park, who is now deceased. On August 4, 1993, Park—who was single and had no children—created the V. Louise Park Revocable Trust. This revocable living trust designated Park as the trustee. In the event of disability, incompetency, or incapacity, Park's sister—Genevieve P. Jones—was to serve as successor trustee. If Jones died or was to serve as trustee, Schmitendorf was to serve in that capacity.

The original trust provided that in the event of Park's death, the assets were to be distributed as follows:

> "As soon as reasonably possible after the death of Grantor, the Trustee shall divide the trust estate as follows: eighty percent (80%) to Genevieve P. Jones and twenty percent (20%) to Karen Schmitendorf Brandt, except that if Genevieve P. Jones predeceases the Grantor then her share shall go and be conveyed and transferred outright, free from Trust, to Karen Schmitendorf Brandt, but if Karen Schmitendorf Brandt predeceases Grantor, then her share shall be conveyed to Jay A. Schmitendorf."

For several years, Park lived with Jones at John Knox Village in Lee's Summit, Missouri. However, Jones died in October 2012 and Park—who was then 87 years old—moved to Bridge Haven Memory Center in Lawrence. At the time, Schmitendorf lived in Davis, California, and Taylor lived in Lawrence. The purpose of the move was so that Park would be closer to Taylor in case she needed assistance. In order to effectuate the move, Park signed durable powers of attorney, naming both Schmitendorf and Taylor.

On November 15, 2012, Schmitendorf and Taylor met with Molly Wood—an attorney who practices elder law in Lawrence—to discuss Park's long-term care planning and Jones' estate as well as other matters. A few months later, Schmitendorf and Taylor met with Wood again. At the second meeting, Park's trust was discussed but the parties dispute the details of the discussions.

At some point, Schmitendorf provided a copy of Park's trust to Wood. In turn, Wood prepared a draft amendment to the trust that provided that the remainder of the trust assets would be distributed in equal shares to Schmitendorf and Taylor upon Park's death. The amendment also designated Schmitendorf as trustee of Park's trust and Taylor as successor trustee. On February 11, 2013, Schmitendorf returned to her home in California.

Three days later, Wood met alone with Park in a conference room to discuss the amendment to the trust. While the two met, Taylor remained in the lobby. During this meeting, Park executed the trust amendment and Wood notarized her signature. After the February 14, 201 meeting, Wood provided copies of the 2013 trust amendment signed by Park to both Schmitendorf and Taylor.

The 2013 amendment changed the distribution of the trust assets in the event of Park's death, as follows:

> "WHEREAS in recognition of Genevieve P. Jones's death, the Grantor wishes to alter the Trust's distribution pursuant to Paragraph 3 Death of Grantor;
> "THEREFORE, pursuant to her reserved authority, V. LOUISE PARK does hereby replace paragraph 3.1 with the following:
> "As soon as reasonably possible after the death of Grantor, the Trustee shall divide the trust estate to be conveyed outright, free from Trust as follows:  50% to Karen Schmitendorf, *per stirpes*, and 50% to Deborah D. Taylor, *per stirpes*."

4

Even after the 2013 amendment was signed, Schmitendorf continued to act as the sole trustee of Park's trust. In June 2014, Schmitendorf purchased a house in Lawrence—using trust assets—in anticipation of Park living there and Schmitendorf opening a small assisted living facility. Although Park never moved in, Schmitendorf moved from California and began living in the house owned by the trust. In September 2014, Schmitendorf made a substantial gift from the trust assets to the Greater Kansas City Community Foundation in order to establish an endowment in Park's name.

About a year later, Schmitendorf—in her capacity as trustee—transferred the deed to the house in Lawrence from Park's trust into the Karen K. Schmitendorf Family Trust. The following month, Schmitendorf received a letter from an attorney representing Taylor expressing concern about the use of trust assets. In addition, Taylor indicated that she intended to file the necessary paperwork to be named as Park's guardian.

On January 15, 2016, Taylor filed a petition for the appointment of a guardian for Park. In the petition, Taylor requested that the district court appoint her as Park's guardian. The following month, Schmitendorf filed her answer and counterclaim in which she asked the district court to name her as guardian should it be determined that a guardianship was necessary. Moreover, Schmitendorf asked the district court to declare the durable powers of attorneys executed by Park in 2012 to be void due to Park's lack of capacity. In particular, Schmitendorf asserted:

"19. On August 4, 1993, Vera Louse Park executed the V. Louse Park Revocable Living Trust. . . .

"20. A purported amendment to the V. Louise Park Revocable Living Trust was executed on February 14, 2013. . . .

. . . .

"22. In October and November 2012, the capacity of V. Louise Park was diminished to such an extent that she did not understand or know the nature and extent of

5

her assets, could not readily [identify] visiting family and was dependent on others for her care.

"23. Upon information and belief, as early as 2012, V. Louise Park was diagnosed with Dementia (Alzheimer's type) and any document she signed after such diagnosis would have been done at a time when she did not have sufficient contractual capacity to execute such documents.

"24. Upon information and belief, sometime prior to October 2012, Genevieve P. Jones determined V. Louise Park was no longer able to handle her affairs due to disability, incompetency or incapacity, and Genevieve P. Jones began acting as Successor Trustee under the Trust."

In early 2016, the district court appointed a guardian ad litem to represent Park's interests in the litigation. Subsequently, the parties agreed to attempt to resolve their disputes with the assistance of the guardian ad litem. Initially, these negotiations were not successful, and Taylor filed a "Petition for Immediate Removal of Trustee and Damages for Breach of Trust" in the district court. In doing so, Taylor sought the removal of Schmitendorf as the trustee of Park's trust and alleged "multiple acts of breach of trust, financial misappropriation and self-dealing [by Schmitendorf] . . . concerning approximately $1 million of assets." Later, the district court consolidated the removal action with the guardianship case.

The parties continued to participate in settlement negotiations and signed a limited settlement agreement regarding the transfer of money to the Greater Kansas City Community Foundation. In the agreement, the parties agreed that the amount of $251,709 would be transferred back to the trust, and the Foundation subsequently returned the money. The agreement recognized that both Schmitendorf and Taylor "are currently designated as equal beneficiaries of the V. Louise Park Revocable Living Trust executed on August 4, 1993 . . . ." Ultimately, Schmitendorf and Taylor were also able to agree on the terms of a Family Settlement Agreement pursuant to K.S.A. 59-102(8).

On July 20, 2016, the district court held an evidentiary hearing to consider the Family Settlement Agreement as well as the guardianship issue. At the beginning of the hearing, counsel representing Schmitendorf and Taylor announced that the parties had entered into a Family Settlement Agreement and submitted it for the court's approval. Likewise, counsel announced that the parties had agreed to be appointed as Park's co-guardians.

The Family Settlement Agreement presented to the district court provides:

"All parties to this Agreement desire to agree to a settlement of the matters at hand including trust assets and distributions, care and control of V. Louise Park, and future estate matters as best they can be determined at this date.

. . . .

"5. Distribution: Each party hereto consents and agrees that after the payment of all costs and expenses as listed above all of the remaining assets of Vera Louise Park and the Trust be divided, per the Amendment to the Trust dated February 14, 2013, as follows:

"a. Karen Schmitendorf shall receive 50%, per stirpes, and
"b. Deborah D. Taylor shall receive 50% share, per stirpes."

Paragraph 6 of the Family Settlement Agreement provided additional terms agreed upon by the parties, including:

- Schmitendorf agreeing to resign as successor trustee and Taylor being appointed as the new successor trustee;
- Confirming that the funds given to the Greater Kansas City Community Foundation would be returned to Park's trust in accordance with the previous agreement of the parties;

7

- Schmitendorf agreeing to execute a promissory note and mortgage to Park's trust in the amount of $323,000, in return for the transfer to her of the house in Lawrence purchased with trust assets;

- Schmitendorf agreeing to execute a promissory note to the trust in the amount of $106,430, as reimbursement for expenditures of trust assets for which she received the benefit; and

- Taylor agreeing to execute a promissory note to the trust in the amount of $60,662, as reimbursement for expenditures of trust assets for which she received the benefit.

Paragraph 7 of the Family Settlement Agreement provided:

"By signing this Agreement neither party admits or denies that they have acted improperly or have any fault or liability in relationship to the other, the Trust, Vera Louise Park, or any other potentially interested persons. This Agreement shall not be interpreted in any manner except to represent the intentions of the parties to resolve their disagreements in a practical manner."

In addition, Paragraph 8 of the Family Settlement Agreement stated in part:

"The parties hereto consent to the entry of an order of the District Court of Douglas County, Kansas, approving and incorporating this agreement and its attachments as the court's findings as to the proper resolution of the parties' conflict. The agreement shall constitute a 'valid settlement agreement' as that term is defined in K.S.A. 59-102(8) and shall be enforceable as such under the laws of the State of Kansas."

At the evidentiary hearing, Schmitendorf testified under oath—in response to questions from her attorney—as follows:

"Q. Okay. Ms. Schmitendorf, you and I have worked on this matter for some time; is that correct?

"A. Yes.

"Q. Do you fully understand the terms and conditions of the agreement?

"A. Yes, I do.

"Q. Is it true to say that you regret that this has come down to an agreement, but yet you fully understand the terms and conditions?

"A. Yes.

"Q. And no one has forced you to sign this?

"A. No.

"Q. And its voluntary?

"A. Yes.

"Q. And you believe it's in your best interests to do so?

"A. I believe it's in my interests, and Louise's interests, yes."

After considering the evidence and the arguments of counsel the district court approved the Family Settlement Agreement. The district court also appointed Schmitendorf and Taylor as co-guardians of Parks. The district court subsequently entered a journal entry memorializing its approval of the Family Settlement Agreement.

Among other things, the journal entry states:

"The Court, after hearing the evidence and arguments of counsel, reviewing the pleadings on file, and being well and fairly advised in the premises, hereby finds and orders as follows:

. . . .

"2. The Family Settlement Agreement presented and acknowledged in front of the Court is admitted to the record. The Family Settlement Agreement is a full and final settlement of all the Petitions and pleadings filed by Deborah D. Taylor, Vera Louise Park, Karen Schmitendorf, by and through their respective attorneys, to date.

"3. A Petition to Appoint Co-Guardians was presented to the Court and an Order appointing Co-Guardians is granted. Karen Schmitendorf and Deborah D. Taylor shall be issued Letters of Co-Guardianship."

It is undisputed that both Schmitendorf and Taylor subsequently fulfilled their respective financial duties and obligations as set forth in the Family Settlement Agreement.

Unfortunately, Park died November 6, 2016. Just two days later, Schmitendorf filed a "Petition to Contest Validity of 2013 Amendment of Trust" that is the subject of this appeal. In the petition, Schmitendorf alleged that Park lacked the capacity to execute the 2013 amendment to the trust. In addition, Schmitendorf claimed that Taylor exercised undue influence over Park. The district court subsequently directed distributions to be made to Schmitendorf and Taylor—as co-beneficiaries of Park's trust—in accordance with the terms of the 2013 amendment to the trust as provided for under the terms of the Family Settlement Agreement. Nevertheless, the litigation continued.

On May 29, 2018, Taylor filed a motion seeking summary judgment. In her motion, Taylor argued that the plain and unambiguous language of the Family Settlement Agreement precluded the claims asserted by Schmitendorf in this case. Specifically, Taylor asserted that the terms of the Family Settlement Agreement reflect the parties' intent to settle any and all issues regarding the distribution of the assets of Park's trust— including any questions regarding the validity of the 2013 amendment to the trust agreement. In response, Schmitendorf argued that her claims regarding Park's capacity and Taylor's alleged undue influence were not covered by the terms of the Family Settlement Agreement.

On August 22, 2018, the district court granted the motion for summary judgment in favor of Taylor. In a comprehensive memorandum decision, the district court ruled that the language used in the Family Settlement Agreement

> "clearly addresses any dispute about the enforceability of [the] 2013 Trust Amendment (affirming its material terms), and since there was an express claim of [Park's] incapacity

10

within that litigation, there is no question that . . . any claim challenging the 2013 Trust Amendment based on lack of capacity of Vera Park would be barred as a matter of law."

Moreover, the district court ruled that the language used in the Family Settlement Agreement "clearly encompasses a claim of undue influence over Ms. Park." The district court further ruled that the introduction of "extrinsic evidence as to the meaning or purpose of the [Family Settlement Agreement] is unnecessary, and would be improper, in the face of such plain language."

The district court reasoned:

"The characterization by Ms. Schmitendorf that the Guardianship case involved 'only' the question of whether a guardian/conservator should be appointed is belied by the terms of the [Family Settlement Agreement] itself. It addresses more than just whether a guardian should be appointed and who should be appointed. It addresses the operation, funding, and distribution of trust assets."

The district court also found that there was nothing in the Family Settlement Agreement reserving any potential cause of action for determination at a later date. Likewise, the district court found no indication that Schmitendorf had newly discovered evidence that was discovered after the Family Settlement Agreement was executed by the parties and approved by the court. The district court concluded: "The [Family Settlement Agreement], on its face, addresses 'trust assets and distributions' and 'future estate matters as best as they can be determined at this date.' The 2013 Trust Amendment concerns distribution of trust assets. It fell squarely within such language."

ANALYSIS

On appeal, Schmitendorf contends that the district court erred in granting summary judgment as a matter of law in favor of Taylor. Consequently, the primary issue that we must resolve is whether the Family Settlement Agreement previously entered into

11

by the parties—and approved by the district court—precludes the claims asserted by Schmitendorf in this case. The parties do not contest the validity of the Family Settlement Agreement. Rather, Schmitendorf and Taylor disagree over the interpretation of the terms of their agreement.

*Standard of Review*

Under K.S.A. 2019 Supp. 60-256(c)(2), a district court may enter summary judgment where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See also Kansas Supreme Court Rule 141 (2019 Kan. S. Ct. R. 211). As the Kansas Supreme Court has explained:

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

Here, the resolution of the issue presented requires interpretation of the Family Settlement Agreement executed by the parties. The interpretation and legal effect of written instruments are matters of law over which our review is unlimited. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016); *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). "The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of the

contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself." *Liggatt v. Employers Mutual Cas. Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002).

Likewise, "a court ascertains the parties' intent from the four corners of the [written] agreement, construing 'all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision.'" *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 313 P.3d 808 (2013). Our review of the scope of prior litigation and whether such prior actions preclude litigation claims is also unlimited. See *Venters v. Sellers*, 293 Kan. 87, 93, 261 P.3d 538 (2011).

*Family Settlement Agreement*

Kansas law favors the settlement of legal disputes. Absent bad faith or fraud, litigants who agree to resolve disputes may not subsequently repudiate their agreements. *In re Estate of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105 (1979); see *James Colborn Revocable Trust v. Hummon Corp.*, 55 Kan. App. 2d 120, 128, 408 P.3d 987 (2017). In interpreting settlement agreements, it is important to remember that "'[t]he law favors settlement of disputes'" over prolonged litigation. *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 903, 317 P.3d 139 (2014).

In particular, "family settlement agreements are favorites of the law and when fairly made, are to be given liberal interpretation and should not be disturbed by those who entered into them or by those claiming under or through them." *In re Estate of Thompson*, 226 Kan. at 441; see *Butts v. Lawrence*, 22 Kan. App. 2d 468, 471, 919 P.2d 363 (1996); *Cassity-Hauck v. Hauck*, No. 120,022, 2019 WL 1497083, at *5 (Kan. App. 2019), *rev. denied* 310 Kan. 1061 (2019). Our Supreme Court has found that family settlement agreements are favored because they "prevent litigation between heirs which is so often wasteful and which engenders such bitter feeling between people who should

13

have a tender regard for each other. The desire that family harmony should not be destroyed by an unequal distribution [of assets] has been held sufficient consideration to support a family settlement." *Mills v. Purdy*, 142 Kan. 133, 135-36, 45 P.2d 1049 (1935).

As defined in K.S.A. 59-102(8), a family settlement agreement is "a written and acknowledged instrument which affects the administration or distribution of the estate and which is entered into by all interested heirs, devisees, legatees and persons whose interests are affected by the settlement agreement, all of whom must be competent or authorized to enter into such agreement." The law of contracts governs the enforcement and interpretation of family settlement agreements. See *Ferguson v. Smith*, 31 Kan. App. 2d 311, 313, 63 P.3d 1119 (2003). Like other contracts, the primary rule for interpreting a family settlement agreement is to ascertain the parties' intent. "If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015).

Schmitendorf argues that Kansas law assumes that silence in a contract at a minimum creates an ambiguity requiring the consideration of extrinsic evidence. However, we do not find *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 244 F. Supp. 2d 1250, 1268 (D. Kan. 2003)—which Schmitendorf cites as support for her argument—to be particularly helpful to our analysis in this case. Even though silence may create an ambiguity under some circumstances, we note that the Family Settlement Agreement executed by Schmitendorf and Taylor expressly states that the parties intended to settle "the matters at hand *including trust assets and distributions*, care and control of V. Louise Park, and *future estate matters as best they can be determined at this date*." (Emphases added). Like the district court, we find this language to be significant in determining the intent of the parties.

14

As the district court found, the parties were aware of the issues relating to Park's mental capacity as well as those relating to alleged undue influence when they signed the Family Settlement Agreement. Significantly, the Family Settlement Agreement was entered approximately three years after Park executed the 2013 amendment to her trust. Further, the Family Settlement Agreement unequivocally states that it covered all of the parties' disputes—including those relating to the trust assets and distributions. In fact, the Family Settlement Agreement specifically adopted the distribution method set forth by Park in the 2013 trust amendment. Thus, we find that any challenge to the 2013 trust amendment was included in the "trust assets and distributions" and "future estate matters" provisions in the Family Settlement Agreement.

Although it is true that Schmitendorf did not seek to invalidate the 2013 trust amendment in the first lawsuit, she explicitly argued in the previous litigation that Park lacked capacity as early as 2012. As a review of the record reveals, Schmitendorf argued in the prior litigation that Park did not have the capacity to execute the 2012 durable powers of attorneys or other legal documents after that time. Specifically, Schmitendorf alleged in her counterclaim in the prior litigation that "as early as 2012, V. Louise Park was diagnosed with Dementia (Alzheimer's type) and *any document she signed after such diagnosis would have been done at a time when she did not have sufficient contractual capacity to execute such documents*." (Emphasis added.) Consequently, the concerns regarding Park's capacity to execute legal documents at the time the 2013 trust amendment was signed were well known to the parties when at the time that they executed the Family Settlement Agreement.

Next, Schmitendorf suggests that the language of the Family Settlement Agreement does not preclude litigation regarding the validity of the 2013 amendment to Park's trust. She argues that the Family Settlement Agreement was restricted to three issues:  (1) removal of Schmitendorf as trustee; (2) the appointment of a guardian ad litem for Park, and (3) repayment to the trust of funds paid from it on behalf of both

15

Schmitendorf and Taylor. We disagree with Schmitendorf's restrictive reading of the plain and unambiguous language of the Family Settlement Agreement.

As the district court pointed out in its memorandum decision, the language of the Family Settlement Agreement clearly reflects the parties' desire to settle all disputes relating to the trust assets as well as the distribution of trust assets. The Family Settlement Agreement also reflects the parties' desire to settle all disputes relating to the "care and control of Vera Louise Park . . . ." Likewise, "by signing this Agreement neither party admits or denies that they have acted improperly or have any fault or liability *in relationship to the other, the Trust, Vera Louise Park*, or any other potentially interested parties." (Emphasis added.) Thus, we find that that the language of the Family Settlement Agreement reflects the intent of the parties not only to resolve the specific claims asserted in the prior litigation but also to resolve future disputes relating to the trust as well as to the estate of Vera Louise Park.

Furthermore, the parties' intent to allow Park's 2013 amendment to the trust to stand is found in Paragraph 5 of the Family Settlement Agreement. This paragraph states:

> "Each party hereto consents and agrees that after the payment of all costs and expenses as listed above all of the remaining assets of Vera Louise Park and the Trust *be divided, per the Amendment to the Trust dated February 14, 2013*, as follows:
>
>> "a. Karen Schmitendorf shall receive 50%, per stirpes, and
>> "b. Deborah D. Taylor shall receive 50% share, per stirpes." (Emphasis added.)

In other words, the plain language of the Family Settlement Agreement provided that Taylor be added as a trust beneficiary and that the assets of the Park trust should be divided equally—per stirpes—between Taylor and Schmitendorf after Park died. As the district court recognized, this is the manner of distribution set forth by Park in her 2013 amendment to the trust agreement. As such, we find that Schmitendorf's argument

16

regarding the 2013 amendment contradicts the plain and unambiguous language of the Family Settlement Agreement because there is nothing in the Family Settlement Agreement to suggest that the distribution is contingent upon a ruling by the district court regarding the validity of the 2013 amendment.

We note that Schmitendorf does not allege she discovered new information after the Family Settlement Agreement was approved by the district court. Rather, a review of the record reveals that the parties were well aware of Schmitendorf's concerns about Park's capacity as well as possible undue influence when the Family Settlement Agreement was approved by the district court. As such, if Schmitendorf truly anticipated future litigation regarding the validity of the 2013 amendment, she should have reserved the right in the Family Settlement Agreement. However, Schmitendorf did not do so.

By claiming that she did not intend to give up her right to file a subsequent lawsuit to challenge the validity of the 2013 trust amendment, Schmitendorf is essentially repudiating the Family Settlement Agreement that she voluntarily signed and that was approved by the district court in 2016. When parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate the settlement. *James Colborn Revocable Trust*, 55 Kan. App. 2d at 128; see *Nauman v. Kenosha Auto Transport Co.*, 186 Kan. 305, 310, 349 P.2d 931 (1960). Hindsight, buyer's remorse, or other after-the-fact impulses cannot invalidate a settlement. See *Fieser v. Stinnett*, 212 Kan. 26, 32-33, 509 P.2d 1156 (1973). As this court recognized in *Wichita Clinic v. Louis*, 39 Kan. App. 2d 848, 852-53, 185 P.3d 946 (2008), we have a duty to sustain agreements that are fairly entered into by the parties rather than seeking loopholes or technical legal grounds for defeating the agreements.

Even though Schmitendorf did not explicitly plead undue influence in the 2016 case, she did raise that issue of Park's capacity to execute the 2013 amendment to the trust. As noted by the district court, the language used in the Family Settlement

17

Agreement that the parties were resolving their disputes regarding "trust assets and distribution" is broad enough to encompasses a wide range of potential claims. In fact, Section 3.3.6 of the KBA Kansas Probate & Trust Administration After Death (7th ed. 2008), identifies testamentary capacity, undue influence, and ambiguity in the written instrument as common grounds for litigation. As such, we find that the plain and unambiguous language of the Family Settlement Agreement precludes Schmitendorf from challenging the validity of the 2013 amendment under the theories of lack of capacity as well as undue influence.

## CONCLUSION

In 2016, Schmitendorf and Taylor voluntarily entered into a valid Family Settlement Agreement in which they expressed the intent to resolve their disputes relating to the V. Park Revocable Living Trust and the distribution of trust assets upon Park's death. In Kansas, such agreements are favored because they promote family harmony and prevent wasteful litigation between beneficiaries. Like the district court, we conclude that the plain and unambiguous language of the Family Settlement Agreement signed by the parties precludes Schmitendorf from asserting her claims for relief in this case. Therefore, the district court did not err in granting summary judgment in favor of Taylor as a matter of law.

Affirmed.