NOT DESIGNATED FOR PUBLICATION

No. 123,992

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN MCCUE,
*Appellant*,

v.

DAVID BRUCE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed April 8, 2022. Affirmed.

*Caroline R. Gurney* and *Michael J. Mohlman*, of Smith Mohlman Injury Law, LLC, of Kansas City, Missouri, for appellant.

*Robert A. Wasserman* and *Chapman W. Williams*, of Schaffer & Associates, Chartered, of Overland Park, for appellee.

Before ISHERWOOD, P.J., GREEN and BRUNS, JJ.

PER CURIAM: John McCue appeals from the district court's order granting David Bruce's motion to enforce a settlement agreement. This case arose out of a traffic accident in which it was alleged that Bruce's negligence caused McCue to suffer injuries and damages. After the lawsuit was filed, the attorney representing McCue at the time sent a demand letter seeking to settle for Bruce's automobile liability insurance policy limits. The demand letter contained no time limit for a response, nor was the offer to settle ever

1

withdrawn. About 82 days after the demand letter was received, defense counsel notified McCue's counsel that his client agreed to pay the policy limits. Two days later, a different attorney entered an appearance on behalf of McCue and informed defense counsel that the settlement offer had lapsed.

In response, Bruce moved to enforce the settlement agreement in the district court. After a hearing, the district court found the parties had reached an enforceable settlement agreement and ordered Bruce to pay McCue the policy limits. On appeal, McCue contends that the district court erred in enforcing the settlement. In particular, he argues that the settlement offer lapsed because Bruce did not respond within a reasonable amount of time. In the alternative, he argues that the response from defense counsel should have been treated as a counteroffer that was rejected. Based on our review of the record on appeal, we do not find that the district court erred when it enforced the agreement between the parties to settle for the limits of Bruce's automobile liability insurance policy. Thus, we affirm.

FACTS

On November 21, 2017, McCue and Bruce were involved in a car accident. It appears that the collision occurred when Bruce failed to yield at an intersection and his vehicle struck McCue's vehicle. Following the accident, McCue was transported to the emergency room where he was diagnosed with several fractures of his lower right leg, ankle, and foot. Evidently, McCue's injuries required multiple surgeries as well as follow-up treatment. It also appears that McCue suffered complications as he recovered from the injuries he suffered in the accident.

On November 14, 2019, McCue filed a lawsuit in Johnson County seeking damages allegedly caused by Bruce as a result of the accident. This action was dismissed without prejudice. Subsequently, on May 21, 2020, McCue refiled his lawsuit. In a letter

2

dated June 30, 2020, the attorney representing McCue at the time sent a letter to defense counsel offering to settle the claims arising out of the accident for the limits of Bruce's automobile liability insurance policy. It appears that the letter was received by defense counsel around July 9, 2020, and counsel then forwarded the letter to Bruce's automobile insurance carrier.

The parties agree that the demand letter did not contain a termination date for the settlement offer. Likewise, it is undisputed that McCue's counsel made no attempt to withdraw the offer. Although the letter did not describe McCue's injuries, his medical bills, or his medical conditions, a computer disc containing around 8,750 pages of records—including the police report, medical records, and medical bills—was enclosed. When the demand letter was sent, which was during the COVID-19 pandemic, a trial date in the lawsuit had not yet been sent, and there is nothing in the record on appeal to suggest that the settlement offer was time sensitive.

In an email dated September 29, 2020, Bruce's attorney sent a response to McCue's attorney's demand letter in which he stated that he was "extending the $250,000 policy limits" to settle the claims asserted against his client arising out of the automobile accident. On October 2, 2020, a new attorney entered his appearance on behalf of McCue and informed defense counsel that the settlement offer set forth in the demand lapsed and that there was no longer an offer to accept. According to Bruce's counsel, he was unaware before that time that there was another attorney representing McCue in the lawsuit.

Bruce moved to enforce the settlement agreement in the district court on October 19, 2020. Again, neither the motion nor supporting memorandum is included in the record on appeal. Likewise, although it appears that McCue's new attorney filed a response to the motion, it is not in the record on appeal. Even so, we know that on November 4, 2020, the district court held a hearing on the motion to enforce settlement. Although the parties apparently provided the district court with correspondence relating

3

to the purported settlement, it does not appear that these documents were offered as exhibits or admitted into evidence. Evidently, they were simply provided for demonstrative purposes and are also not included in the record on appeal.

After hearing the arguments presented by counsel, the district court ruled that the settlement should be enforced and that Bruce should pay the policy limits of $250,000 to McCue. In so ruling, the district court explained that there was no termination date in the demand letter and that no attempt had been made to withdraw the offer prior to the response from defense counsel. The district court also explained that it was significant that a large number of records had been provided to Bruce's counsel for the first time with the demand letter. Consequently, the district court concluded that the time taken to review the records in order to appropriately respond to the settlement offer was not unreasonable.

On February 24, 2021, the district court held a second hearing after the attorneys representing the parties could not agree on the terms of the journal entry. As a result, the district court drafted its own journal entry and filed it that afternoon. In the journal entry, the district court found that the letter from McCue's attorney dated June 30, 2020, constituted "a demand for the policy limits of [Bruce's] automobile liability insurance policy" and that this demand served as "an offer to compromise and settle the case." In addition, the district court found that "[t]he demand was met with no other terms" and that the offer to settle for policy limits "was not withdrawn or otherwise modified or amended prior to acceptance by the Defendant."

For these reasons, the district court determined in its journal entry that "the case is settled." Moreover, the district court ordered Bruce to present a check payable to McCue and his attorneys in the amount of the policy limits. Finally, the district court ordered that "[u]pon presentation of the proceeds as directed, and certification of the same by counsel

4

filed in this Court, this case will be deemed dismissed with prejudice." Thereafter, McCue filed a timely notice of appeal.

## ANALYSIS

On appeal, the primary issue presented is whether the district court erred in granting the motion to enforce settlement agreement. McCue divides his argument into two parts. First, McCue argues that his offer to settle for the limits of Bruce's automobile liability insurance policy lapsed because no response was received in a reasonable time. Second, McCue argues that even if the offer had not lapsed, there was not an enforceable settlement agreement considering how Bruce's response was worded. In response, Bruce argues that the district court correctly ruled that the parties formed a valid and enforceable settlement agreement.

*Adequacy of Record on Appeal*

At the outset, it is important to recognize that the record on appeal is sparse and there appears to be several documents that were presented to the district court that have—for whatever reason—not been provided to us. Neither the demand letter in which Bruce offered to settle for the policy limits nor the email in which McCue purportedly accepted the offer is in the record on appeal. Likewise, the motion to enforce settlement, the supporting memorandum, the response to the motion to enforce settlement, and the reply to the response—as well as any exhibits that may have been attached to these documents—are not included in the record on appeal.

As the appellant, it was McCue's responsibility to designate a record sufficient to establish the error claimed on appeal. See *State v. Vonachen*, 312 Kan. 451, 460, 476 P.3d 774 (2020). We note that McCue has not filed a motion to request additions to the record under Kansas Supreme Court Rule 3.02(d) (2021 Kan. S. Ct. R. at 20). As a result,

5

we have tried to glean the facts primarily from the transcripts of the hearings held before the district court and the briefs of the parties. Fortunately, most of the material facts relating to the issue presented on appeal are not in dispute.

We also note that Bruce argued in his brief that McCue's appeal should be dismissed for failure to comply with Kansas Supreme Court Rules 3.03 (2021 Kan. S. Ct. R. at 22) and 6.01 (2021 Kan. S. Ct. R. at 35). In particular, McCue points out that Bruce failed to timely request transcripts of the hearings held by the district court and that his brief was not timely filed. Whether we dismiss an appeal for failure of a party to substantially comply with the appellate rules is a matter left to our discretion. Likewise, Kansas law favors the resolution of legal disputes. *Tonn Family Ltd. Ag. Ptnshp v. Western Ag. Ins. Co.*, No. 120,933, 2021 WL 1045206, at *6 (Kan. App. 2021) (unpublished opinion) (citing *McDaniel v. Southwestern Bell, Inc.*, 45 Kan. 2d 805, 808, 256 P.3d 872 [2011]).

Under the circumstances presented, we do not find that Bruce was prejudiced by McCue's failure to comply with the appellate rules. Specifically, we find that McCue's request for the transcripts was made the day the appeal was docketed. We also find that hearing transcripts were filed before the filing of McCue's brief and that Bruce was able to adequately brief the issue presented. As a result, we will exercise our discretion to address the arguments presented on the merits. Nevertheless, we will consider only the facts supported by the hearing transcripts or as otherwise agreed to by the parties.

*Reasonable Time to Accept Settlement Offer*

It is undisputed that McCue's letter offering to settle for the limits of Bruce's automobile liability insurance policy did not include a termination or expiration date. Under Kansas law, unless a settlement offer states an explicit time for acceptance, it remains open for a reasonable time. *Farm Bureau Mut. Ins. Co. v. Progressive Direct Ins.*

*Co.*, 40 Kan. App. 2d 123, 130, 190 P.3d 989 (2008) (citing *Trounstine & Co. v. Sellers*, 35 Kan. 477, 453-55, 11 P. 441 [1886]; 1 Williston on Contracts § 5:7 [4th ed. 2007]). As stated in 1 Williston on Contracts § 5:7 (4th ed. 2021), "[w]hat constitutes a reasonable time will ordinarily be a question of fact, the determination of which will depend upon all of the circumstances surrounding the particular offer and acceptance." Accordingly, what amounts to a reasonable time varies based on the particular facts of each case.

Because the question of what amounts to a reasonable time to respond to a settlement offer is a question of fact, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusion. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). In making this determination, we are not to reweigh the evidence or redetermine questions of fact. *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015). However, the conclusions of law based on those findings are subject to our unlimited review. *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017).

In *Farm Bureau*, the issue presented involved the timeliness of a subrogation claim between automobile insurance carriers. The case arose out of an automobile accident in which Joseph Binkley allegedly caused injury to Sabrina Henry. After Progressive Direct—which was Binkley's automobile liability carrier—offered its policy limits of $25,000 to settle, Farm Bureau Mutual—which was Henry's underinsured motorist carrier—substituted its payment for Progressive Direct's offer. About seven months later, Farm Bureau Mutual sought to accept the $25,000 offered by Progressive Direct, and Progressive Direct refused to pay the amount previously offered.

Although the facts and the legal issues presented in the *Farm Bureau* case are significantly different from this case, the panel did consider a question relating to the

7

timeliness of the actions taken by Farm Bureau Mutual in an attempt to collect the $25,000 policy limits offered by Progressive Direct. Significantly, the panel found that "Farm Bureau did not make demand on Progressive until . . . nearly 7 months after [it] substituted its payment for the settlement offer." 40 Kan. App. 2d at 130. As a result, the panel concluded—as a matter of law—that "even if it is assumed that Farm Bureau could have accepted Progressive's settlement offer after [it] substituted its payment, the offer lapsed before Farm Bureau indicated a timely acceptance." 40 Kan. App. 2d at 130.

Here, the time between McCue's demand letter being received by Bruce's attorney and the response being sent was approximately 90 days. At the time the demand letter was sent, McCue had already filed a lawsuit and nothing in the record suggests that the parties faced any pressing deadlines. Moreover, in support of the offer to settle for Bruce's policy limits, the attorney representing McCue enclosed a computer disc— containing about 8,750 pages—which included the accident report, medical records, and medical bills.

As previously noted, McCue's offer to settle for the limits of Bruce's automobile insurance liability coverage included no expiration or termination date. Likewise, no attempts were made by McCue to withdraw his offer prior to Bruce's acceptance of the offer. It was only after Bruce's attorney informed the attorney representing McCue of the willingness to pay the policy limits of $250,000 that a new attorney entered the picture on McCue's behalf and claimed the offer had expired.

After considering the evidence, the district court found that the time between the offer and acceptance was not unreasonable because the demand letter gave no indication regarding how long the offer would be on the table. Furthermore, the district court pointed to the large number of records that Bruce and his insurer needed to evaluate before determining whether the policy limits should be paid. The district court explained that these records raised questions regarding the amount of damages caused by Bruce

verses the amount of damages that may not have been caused by him. Ultimately, the district court determined that 90 days to respond was not unreasonable based on the "the volume of material" to be evaluated.

Although McCue suggests that 90 days is unreasonable as a matter of law, he provides no authority to support this suggestion. Instead, he points us to a provision of K.S.A. 40-2404—which regulates unfair or deceptive acts or practices in the business of insurance—that provides that insurance companies should "promptly settle claims, where liability has become reasonably clear . . . ." K.S.A. 2020 Supp. 40-2404(9)(m). This statute is part of the Kansas Unfair Trade Practices Act (KUTPA) and applies to administrative actions against insurance companies for unfair practices.

Here, although Bruce had automobile liability insurance coverage, no insurance carrier is a party to this action. Moreover, the KUTPA does not provide a private cause of action. *Jahnke v. Blue Cross and Blue Shield of Kansas, Inc.*, 51 Kan. App. 2d 678, 692-96, 353 P.3d 455 (2015), *rev. denied* 303 Kan. 1078 (2016); see *Wichita Firemen's Relief Association v. Kansas City Life Insurance Company*, 237 F. Supp. 3d 1135, 1143 (D. Kan. 2017) ("There is no private cause of action under the KUTPA."). In addition, there is no evidence in the record on appeal to establish that Bruce's automobile liability insurance carrier did anything to violate the KUTPA. As such, we do not find that the timeliness of Bruce's response to McCue's settlement offer was unreasonable as a matter of law.

As for the length of time that may be reasonable to respond to a settlement offer, we find guidance in the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq., and the Uniform Procedure for Payment of Claims, K.S.A. 12-105a et seq. Although this is not an action brought under the KTCA, we find it significant that the Kansas Legislature found 120 days to be a reasonable amount of time for a municipality to respond to a settlement demand. K.S.A. 2020 Supp. 12-105b(d). The purpose of K.S.A. 12-105b is to allow for

9

"'the opportunity to investigate the claim, to assess its liability, to attain settlement, and to avoid costly litigation.'" *Nash v. Blatchford*, 56 Kan. App. 2d 592, 613, 435 P.3d 562 (2019) (quoting *U.S.D. No. 457 v. Phifer*, 729 F. Supp. 1298, 1306 [D. Kan. 1990]).

Similarly, we find that the reason Kansas law provides that a settlement offer remains open for a reasonable time where there is not an explicit time for acceptance stated is to allow the defendant to investigate the claim, to assess liability, and to evaluate potential damages before responding. Because reasonableness must be determined on a case-by-case basis, we cannot say that the approximately 90 days taken to respond in this case was unreasonable as a matter of law. Moreover, we find substantial competent evidence to support the district court's determination that the time taken by Bruce to respond was not unreasonable.

A review of the record reveals that the settlement demand letter did not contain a time limit for Bruce to respond, nor did it contain a date on which the offer to settle for the limits of Bruce's automobile liability insurance policy would expire. Likewise, McCue did not take any action to withdraw the settlement offer until after Bruce agreed to pay the policy limits. There is also nothing in the record to suggest that McCue's attorney ever communicated with Bruce's attorney about the status of the offer after he sent the demand.

Like the district court, we find it significant that McCue's demand letter was accompanied by over 8,750 pages of records that had not previously been provided to Bruce's attorney or to his automobile liability insurance carrier. As a result, the district court found that 90 days was not an unreasonable amount of time to evaluate the claim and to respond to the demand. Although reasonable minds could differ, we do not find that the district court abused its discretion in reaching this conclusion based on the evidence. Rather, a rational fact-finder could conclude that it was reasonable for Bruce's attorney—as well as the automobile liability insurance carrier—to take approximately 90

10

days to review the voluminous record, to investigate liability, to evaluate the damages, to assess causation, and to decide whether to pay the $250,000 policy limits.

Furthermore, McCue has not shown that he was prejudiced by the time it took for Bruce to respond to his offer to settle this lawsuit. As discussed above, the record reveals that McCue had already filed this action, there were no pressing deadlines imposed by the district court, and no trial date had been set. In fact, we note that the settlement offer was made and the response was sent while the activities of Kansas courts were severely restricted because of the COVID-19 pandemic. See Kansas Supreme Court Administrative Order 2020-PR-058, effective May 27, 2020 (suspending "[a]ll statutes of limitation and statutory time standards or deadlines"—with limited exceptions—until further notice due to the COVID-19 pandemic). Under the unique circumstances presented in this case, we find no reason to replace our judgment for that of the district court on the question of whether the response to the settlement offer was made within a reasonable amount of time.

*Acceptance of Settlement Offer*

In the alternative, McCue contends that even if the settlement offer did not lapse, there was not an enforceable agreement considering how Bruce's response was worded. In particular, McCue points to a quotation from the response email that was read into the record at the hearing on the motion to enforce settlement, in which Bruce's attorney stated:  "Following up on [the settlement demand letter], I extend—I'm extending the $250,000 policy limits. Please let me know if this is accepted." McCue argues that if the email "was a true acceptance, there would be no reason to request confirmation . . . ." In response, Bruce argues that the response constitutes an acceptance because McCue asked for the policy limits and that is what his client agreed to pay.

11

A settlement agreement is a type of contract. *James Colborn Revocable Trust v. Hummon Corp.*, 55 Kan. App. 2d 120, 127, 408 P.3d 987 (2017); see also *Drummond v. Drummond*, 209 Kan. 86, 91, 495 P.2d 994 (1972). Whether a contract has been entered into depends on the intent of the parties and is a question of fact to be resolved by the district court. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). In determining the intent of the parties to form a contract, the focus is "'not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract.' [Citation omitted.]" *Southwest & Assocs. Inc. v. Steven Enterprises*, *LLC*, 32 Kan. App. 2d 778, 781, 88 P.3d 1246 (2004); see *O'Neill v. Herrington*, 49 Kan. App. 2d 896, Syl. ¶ 8, 317 P.3d 139 (2014).

In interpreting settlement agreements, it is important to remember that "'[t]he law favors settlement of disputes'" over prolonged litigation. *O'Neill*, 49 Kan. App. 2d at 903. Moreover, settlement agreements need not be in writing to be enforceable. Once the parties have agreed on the material terms, other nonmaterial provisions or discrepancies can be resolved by the district court consistent with the parties' intent. Additionally, once the parties have agreed on the material terms, neither party may repudiate the contract. 49 Kan. App. 2d at 903; see *Connor v. Hammer*, 201 Kan. 22, 24, 439 P.2d 116 (1968) (enforcing oral agreement to settle case and rejecting the plaintiffs' repudiation of settlement).

In determining whether there has been a meeting of the minds, the evidence must show with reasonable certainty that the parties agreed on the material terms of the contract. *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957 (1976). "A material term is a 'contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done.'" *James Colborn Revocable Trust*, 55 Kan. App. 2d at 127 (quoting Black's Law Dictionary 1698-99 [10th ed. 2014]). If a change is made to a material term in response to an offer, it is treated not as an acceptance but as a counteroffer.

12

*Nungesser v. Bryant*, 283 Kan. 550, 566, 153 P.3d 1277 (2007). Accordingly, "'the relevant inquiry is the 'manifestation of a party's intention, rather than the actual or real intention.'" *Southwest & Assocs. Inc.* 32 Kan. App. 2d at 781.

Because the question of whether the parties have entered into a binding settlement agreement is a question of fact, we must once again examine the record on appeal to determine whether substantial competent evidence supports the district court's finding that a contract exists. *Hodges*, 288 Kan. at 65. In reviewing the district court's findings, we are not to reweigh the evidence or redetermine questions of fact. *Peterson*, 302 Kan. at 104. But our review of the conclusions of law based on those findings is unlimited. *Gannon*, 305 Kan. at 881.

Here, the parties disagree on the most significant finding made by the district court—that defense counsel's email response to the demand letter was sufficient to constitute an acceptance of McCue's settlement offer. As discussed above, the party asserting that the district court erred—in this case McCue—has the burden to designate a record sufficient to allow for appellate review. To the extent that he has failed to provide us with an adequate record, we will presume that the district court's action was valid and that it made the necessary findings to support its decision. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Based on our review of the record, we find that there is substantial competent evidence in the record to support the district court's finding that there was both an offer and acceptance. In particular, a review of the record reveals that Bruce's acceptance mirrored the only material term in McCue's offer—the payment of policy limits. Here, nothing in the record suggests that Bruce's attorney attempted to change a material term or to make a counteroffer. In other words, the material term in the response mirrored the material term in the settlement offer. Although the request for confirmation in the

response could have been worded better, it did not modify the material term or subject matter of the settlement offer.

In summary, the district court—which had the benefit of actually seeing the correspondence between the parties—found that there was an offer to settle for the policy limits and that the offer was accepted without material change. We conclude that this finding is supported by the record and is reasonable based on the evidence. Because the correspondence is not in the record on appeal, our review is limited. Still, based on the representations made to us regarding the contents of the demand letter and of the response email, we find that there is a reasonable certainty that the parties agreed on the only material terms expressed in McCue's offer—the payment of the limits of Bruce's liability insurance policy to settle all claims arising out of the automobile accident on November 21, 2017. Likewise, we find that the additional language in Bruce's response requesting a confirmation of the settlement did not alter the subject matter of McCue's offer nor did it constitute a counteroffer.

Finally, we reiterate that Kansas law favors the settlement of legal disputes. *Schmitendorf v. Taylor*, 58 Kan. App. 2d 292, 301, 468 P.3d 796 (2020). Absent bad faith or fraud, litigants who agree to resolve disputes may not later repudiate their agreements. *In re Estate of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105 (1979); *James Colborn Revocable Trust*, 55 Kan. App. 2d at 128. Here, we find nothing in the record to suggest either bad faith or fraud on the part of either party.

We, therefore, affirm the district court's decision that the parties entered into an enforceable settlement agreement.

Affirmed.